BREAUX, C. J.
Plaintiff sued Louisa Birch, dative testamentary executrix of the late Albert Elmore, and Warren and Joseph Elmore, minors represented by curator ad hoc (they have no tutor), for a judgment annulling a decree a vinculo matrimonii rendered on the 25th day of February, 1898.
The petition of the late Albert Elmore, husband of Emma Johnson, for a divorce, was filed December 7, 1897. This is a petition for a judgment which the court subsequently rendered, which plaintiff sued in this case to have decreed absolutely null.
In this petition for a divorce Albert Elmore alleged that he was married to Emma Johnson on the 27th day of December, 1892; that she left the matrimonial domicile and went away from the city in the year 1896; that she had frequently threatened to leave; that he did all he could to prevail upon her to remain at their domicile; that after she left he heard no more of her and knew nothing of her whereabouts.
In this suit for a divorce he asked for the appointment of a curator ad hoc to represent his wife.
The curator ad hoc was appointed on the 7th day of December, 1897; notified of his appointment the next day. He was not cited, and within eight days after he had been appointed he filed a general denial in the name of his client.
It does not appear that he made the least request for delay, or took any step toward notifying her of the pending suit.
In the month of February of the year 1898 a judgment of divorce was rendered.
There is no entry in the minutes showing that any evidence was heard in the said case for divorce, nor is there a note of evidence in the record.
*280 The foregoing is a short story of the proceedings for divorce.
Robert Elmore, the plaintiff in these proceedings for divorce, died on the 9th of November, 1904. His succession was opened. A woman who claims that she is his surviving widow was married to him after the judgment before mentioned had been rendered, and her two children are heirs.
Plaintiff, Emma Johnson, resists this claim of the alleged widow, Elouise Byrd, who is defendant as testamentary executrix, and her children, on the ground that no legal judgment of divorce was rendered, and that she is still the wife of Albert Elmore. She alleged that the asserted marriage is illegal and null and the children are adulterous.
In her petition attacking the judgment in question she alleged that she was compelled by the outrageous treatment of her husband, Albert Elmore, to leave him; that she went to Alexandria in this state and remained there constantly to the knowledge of Elmore; that she never at any time left the limits of the state; that he (Elmore) corresponded with her frequently.
From the foregoing it is her contention that the judgment is null and void; that she was •not an absentee; that it is null for the further reason that no evidence was adduced to prove that there was necessity for the appointment of a curator ad hoc; that her husband had falsely represented that she had abandoned the matrimonial domicile.
She alleges that she only learned of the judgment of divorce about two months before this suit was brought.
In taking up the issues for decision we will state that it does not appear that the least attempt was made in the first suit for divorce to prove that the defendant Emma Elmore, plaintiff here, was ever an absentee from the state. The petition is absolutely barren of any allegation upon the subject, and the record contains no reference to the defendant in that suit as an absentee. There is affirmative testimony before us in the present suit that she was not an absentee. She testified in her own behalf that she has never left the state, but continued to reside in Alexandria. She produced letters which she swore she had received from her husband, Elmore. These letters were mailed to her address from New Orleans, and they were received by her through the mail at Alexandria. Not knowing how to read, she called upon persons, who testified to that fact, to read her letters to her.
One of these witnesses was Mrs. S. K. Baldwin, of Alexandria, who testified that she had known plaintiff as a servant for about four years before her testimony was taken under commission in 1906. She identified some of the letters as those plaintiff had received from her husband. These letters show that the defendant, the husband, continued to address her (Emma Elmore) at Alexandria, as his wife. This witness further testified: That she had written letters for Emma Elmore to her husband at request of plaintiff. They were sent to him through the mail. That the letters received by plaintiff were received from the post office. She would bring them to witness unsealed to be read.
W. E. Robbins of the same city also testified that he had known plaintiff in Alexandria about six years prior to April, 1906. He also testified that she received letters from New Orleans signed by Albert Elmore, which he read to her at her request, that these letters came through the mail, and that as a favor he answered some of the letters for the plaintiff.
There is evidently some corroboration in these letters and the testimony of these witnesses. One of the letters produced by plaintiff, and which has every appearance of being in the same handwriting as those identified by the witnesses before named, was written *282 by Elmore to his wife a few months before he obtained the judgment of divorce.
It is true that another of these letters (perhaps two), it is stated, was received a few months after the death of Elmore.
As relates to this fact, the contention of defendant is that plaintiff has destroyed her case by the production of letters, admitted ■as being in the handwriting of Elmore, received by her in 1905, bearing the postmark, to wit, February 13, 1905.
We have found no letter of that date, only envelopes produced by plaintiff at the instance of defendant on her motion to have them produced in the suit; but no letters remained, as we infer. The witness does •state that the envelopes contained letters which were received about the time indicated by the postmark. Nothing was said of any moment in regard to the letters (referring to the last letters) contained.
These envelopes are not fatal to plaintiff’s •claim. Letters may have reached Alexandria ■some little time after the death of the writer.
Be that as it may, the witnesses before named have identified a number of the' letters, ■and they all appear to have been written from the city of New Orleans by the husband. The postmark on the envelope is not very evident as to the year. We are not inclined to the thought, however, that the year is other than 1905; but, even if received at that date, it would not do away with the corresponding effect of a number of letters of a prior date, ■supported by disinterested witnesses, who testified that they were received by plaintiff, and that they bore the name of plaintiff’s husband.
From the evidence we must hold that the witness never left the state. If she had left home, and had become an absentee, it was incumbent upon, the plaintiff in the first suit, •or the defendants in the present suit, to so ■allege and prove. She could only be represented by a curator ad hoc, if she was an absentee. She was not a fugitive from justice, nor an absentee, essentials for such an appointment.
The appointment of a curator ad hoc is jurisdictional. Young v. Upshur et als., 42 La. Ann. 362, 7 South. 557, 21 Am. St. Rep. 381.
It follows that there can be no legal judgment rendered contradictorily with the curator ad hoc; for, unless there was proper showing made, the court had no jurisdiction to render such a judgment.
That which in our opinion refers to the curator is not controlling, as it was presented by plaintiff in the alternative; and the court decides the first proposition for appellee.
The defendant in this suit has interposed the prescription of 12 months. Because of want of citation that prescription cannot be of any avail in this suit; for, as the court was without jurisdiction to render the judgment, it was absolutely null.
Our learned brother before whom the case for a divorce was heard, and who rendered a judgment of divorce, presided over the court that rendered a judgment annulling the first decree. He, without the best of reasons, would not have annulled his first decree, whether on the ground before discussed, or other grounds alleged in this suit, which we have not deemed necessary to discuss, for the reason that in our conception the ground discussed by us is sufficient to dispose of the ease.
For reasons assigned, the judgment is affirmed.