419 So.2d 923 (1982)
Leota Mae David PESCHIER
v.
Marjorie Morris PESCHIER, As Testamentary Executrix of the Succession of Lionel Joseph Peschier.
No. 81-C-3143.
Supreme Court of Louisiana.
September 7, 1982.
*924 Thomas W. Sanders, Lake Charles, for applicant.
Kenneth W. DeJeans, Fruge & DeJean, Lafayette, for respondents.
DENNIS, Justice.
We granted writs in this case to determine whether the courts below erred in declaring null a 1960 divorce judgment between the deceased, Lionel Peschier, and the plaintiff, Leota Davis Peschier. Ultimately, we affirm the result reached by the courts below.
The procedural history and facts not in dispute were correctly summarized by the court of appeal as follows:
"On November 28, 1960, the Thirteenth Judicial District Court for the Parish of Evangeline granted Lionel J. Peschier a judgment of divorce against his first wife, Leota Davis Peschier. Leota Peschier instituted this suit on May 17, 1977, against Marjorie Peschier, the deceased Mr. Peschier's executrix, asking that court to declare the 1960 divorce judgment null and void. Judgment was rendered in favor of the plaintiff, decreeing the 1960 divorce proceeding null and void for lack of venue and jurisdiction and also because the divorce was obtained through fraud and ill practices on the part of Lionel Peschier.
*925 "On March 2, 1938, Lionel Peschier and Leota Davis were married and established their domicile in Lafayette Parish. Their first child, Louise Peschier Sims, was born on October 12, 1938. Around 1940 Lionel Peschier and his family moved to and became domiciled in Rapides Parish. On January 9, 1952, a second child, Candice Maria Peschier, was born of the marriage.
"Leota Peschier filed suit in the Ninth Judicial District Court, Rapides Parish, Louisiana against Lionel Peschier for a separation from bed and board and obtained a judgment in her favor on October 14, 1955. On that same day the parties entered into an agreement partitioning the community of acquets and gains. On September 28, 1957, Leota Peschier signed a supplemental community property agreement which recited that the parties were still living separate and apart from each other.
"Lionel Peschier filed the aforementioned divorce suit on October 5, 1960, on the ground that he and his wife had been living separate and apart for more than two years. The petition set forth that Mr. Peschier had been a resident of Evangeline Parish for two and a half years, that reconciliation had not taken place since the 1955 separation and that his wife was an absentee believed to be residing in Amarillo, Texas. This petition was verified by Mr. Peschier on September 30, 1960. Upon the allegation that his wife was an absentee, the court appointed a curator ad hoc to represent Leota Peschier. The curator sent her a certified letter to Amarillo, Texas, but it was returned unclaimed. On November 28, 1960, the trial court rendered judgment in favor of Lionel Peschier granting him a divorce.
"On January 11, 1961, Lionel Peschier contracted a second marriage to Marjorie Aylene Null in Angelina County, Texas. They lived together thereafter at Peschier's home in Lake Charles and the defendant, Marjorie Peschier, has continued to reside in that city. No children were born of this marriage.
"Leota Peschier filed another suit against Mr. Peschier on October 15, 1976, for separation from bed and board in the Ninth Judicial District Court for Rapides Parish. On December 13, 1976, Mr. Peschier died in an automobile accident in Evangeline Parish and Marjorie Peschier was appointed testamentary executrix of his estate.
"As mentioned, this suit for nullity of the 1960 divorce judgment was filed by Leota Peschier on May 17, 1977. The testimony of witnesses and the exhibits offered at the trial established that Mr. Peschier was engaged in the business of coin-operated machines, such as music boxes and so forth, and he owned interests in nightclubs and lounges. His business activities were conducted in several parishes, including Rapides, Evangeline and Calcasieu, requiring him to travel and spend various periods of time in each of these parishes.
"Among others, the trial court made the following findings from the evidence adduced at trial: 1) Lionel Peschier was not a domiciliary of Evangeline Parish at either the time he verified or filed his divorce petition in that parish; 2) Leota Peschier was not an absentee from this state from September 1 to December 31, 1960, but instead was a resident of and domiciled in Rapides Parish during all of that time; 3) Evangeline Parish was not the parish of proper venue for the 1960 divorce suit and therefore the court lacked jurisdiction thereof; and 4) Lionel Peschier deliberately misled his counsel and deliberately practiced a fraud upon the court as he knew that his wife was residing in Rapides Parish and not Amarillo, Texas, when the suit was filed. Therefore, judgment was rendered in plaintiff's favor declaring the 1960 divorce judgment a nullity." [footnotes omitted]
The Third Circuit Court of Appeal found that the record supported the trial court's conclusion that the 1960 divorce judgment was a nullity due to improper venue and because the judgment was obtained through fraud or ill practices on the part of Lionel Peschier. Nevertheless, the court of appeal chose to rest its affirmation of the trial court's decision on the ground that the judgment was defective for a vice of form, the lack of a valid citation and service of *926 process. Peschier v. Peschier, 407 So.2d 1240 (La.App. 3d Cir. 1981). We granted writs to review the correctness of that decision. 410 So.2d 760 (La.1982).
There is a strong public policy against disturbing or declaring invalid a judgment of divorce, especially after a long period of time where the marital status of innocent parties who relied on the validity of that judgment would be disturbed, and more particularly where a decree would render innocent parties guilty of bigamy. Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952); Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949); Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (1951). Because of this strong public policy and a presumption as to the regularity of the judicial proceedings, plaintiff must prove by clear and convincing evidence the grounds for annulment of the 1960 divorce judgment. Wilson v. Calvin, supra; Logwood v. Logwood, 85 La. 1, 168 So. 310 (1936).
The basic issue presented by the court of appeal's decision is whether the 1960 divorce judgment should have been declared null for a vice of form, viz., the lack of a valid citation and service of process. La.C. C.P. art. 2002(2) provides that a final judgment shall be annulled if it is rendered:
"(2) against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken * * *."
La.C.C.P. art. 6(2) provides that valid service of process may be made on an attorney at law appointed by the court to defend the suit when the defendant is either an absentee or an incompetent.
Lionel Peschier's verified petition for divorce filed on October 5, 1960 alleged that his wife was an absentee believed to be residing in Amarillo, Texas. In apparent reliance on this allegation, the trial judge appointed a curator ad hoc pursuant to La. C.C.P. arts. 5091-5095. The curator sent a certified general delivery letter to Amarillo, Texas, but it was returned unclaimed. The validity of the appointment of the curator ad hoc necessarily depends on whether Leota Peschier was an "absentee," which is defined by La.C.C.P. art. 5251(1) as follows:
"Absentee" means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown.
Absenteeism requires more than a temporary absence from the state, Spence v. Spence, 158 La. 961, 105 So. 28 (1925). Our courts have consistently held that a defendant domiciled in Louisiana qualifies as an absentee only if his whereabouts are unknown to the opposing party and could not have been discovered after a diligent search. Bryant v. Austin, 36 La.Ann. 808 (1884); Leatherman v. Parish of East Baton Rouge, 275 So.2d 806 (La.App. 1st Cir. 1973); Leidig v. Leidig, 187 So.2d 201 (La. App. 3d Cir. 1966).
The trial court found that Leota Peschier was not an absentee at the time of the 1960 divorce proceedings. It also found that there was no evidence whatsoever that Leota was ever a resident of Amarillo, Texas. The court of appeal affirmed these findings, noting as follows:
"We are convinced from our review of the record that Leota Peschier established `by exceptionally strong and convincing proof' that she resided and was domiciled at No. 6 Baywood Drive in Pineville, Rapides Parish, Louisiana, and was not an absentee from this state during the time that the 1960 divorce suit was before the district court in Evangeline Parish. While she may have visited her sister in Pasadena, Texas, during the latter part of 1960, her whereabouts on such brief visit or visits were known or easily ascertainable by her husband." 407 So.2d at 1242.
*927 The record fully supports these findings. The trial court was apparently convinced by the testimony of Leota, her daughters Louise and Candace, her grandson Duke, her sister Louise Davis Delahoussaye, and her niece Donna Delahoussaye. This uniform testimony tells of their uninterrupted presence at their Pineville residence during the period in question, and of Lionel's regular returns from business trips to that residence, where he kept his business equipment and permanent wardrobe and slept with Leota. The record justifies the previous courts' reliance on this testimony and rejection of Mr. Delahoussaye's testimony to the contrary as the product of his animosity for his daughter, Donna Delahoussaye. We find even more convincing, however, the testimony of disinterested witnesses such as Leota's neighbors, Agnes Smith and Mr. and Mrs. Kenneth Humphries; garbage collector, Mr. Scott Perry, Jr.; and Leota's insurance agent, Mr. Richard Owen Wilson.
Agnes Smith testified that Leota lived in a neighboring house in Pineville from the mid-1950's to the mid 1970's, and was never gone for more than two or three days at a time. Mrs. Smith also recalled frequently seeing Lionel Peschier and his truck at the house during the years from 1959 to 1961. Similarly, Kenneth Humphries, whose home in Pineville was separated from the Peschier dwelling only by a vacant lot, recalled the continuous presence of Leota and the children during the 1950's and 1960's, and also Lionel's constant coming and going through the late 1960's or early 1970's. Mrs. Humphries generally echoed the testimony of her husband, and added a particular recollection of Lionel's presence at the Peschier residence in 1960. Richard Owen Wilson recalled with certainty that he sold burial insurance to Leota and her daughters at their Pineville residence soon after he moved to the area around Christmas of 1959. He also regularly collected the premiums from Leota at this address, and saw Lionel several times at the house on such visits. Finally, Mr. Scott Perry, a trash collector, personally collected garbage from the Peschier residence from 1958 to about 1970, collected payment for such services from both Mr. and Mrs. Peschier during this time and specifically recalled hauling away some additional brush from the residence in the summer of 1960 at Lionel's request.
Taken together, the testimony of all of these witnesses provides overwhelming proof that Leota was not an absentee at the time of the 1960 divorce proceedings and that her whereabouts were either known or easily ascertainable by her husband, Lionel Peschier.
Citation and service thereof are essential in all civil actions except summary and executory proceedings. Without them all proceedings are absolutely null. La.C. C.P. art. 1201. Consequently, this court has held that a spouse, who is not an absentee, cannot be cited in divorce proceedings through a curator ad hoc, and a judgment rendered contradictorily with a curator under such circumstances is void. Spence v. Spence, 158 La. 961, 105 So. 28 (1925); Elmore v. Johnson, 121 La. 277, 46 So. 310 (1908). Cf., Whitney v. Finnegan, 129 La. 572, 56 So. 512 (1911); Wood v. Hyde, 209 So.2d 51 (La.App. 4th Cir. 1968); Dickey v. Pollock, 183 So. 48 (La.App. 2d Cir. 1938); Ventress v. Akin, 177 So. 117 (La.App. 2d Cir. 1937). Because Leota was not an "absentee" at the time of the 1960 divorce proceedings, the divorce judgment rendered against her was defective for a vice of form, the lack of a valid citation and service of process. La.C.C.P. arts. 6(2); 1201: 2002(2).
The relator, Marjorie Peschier, urges in brief that Leota Peschier's action for annulment cannot succeed because she voluntarily acquiesced in the divorce judgment. La.C.C.P. art. 2003 provides as follows:
A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002. *928 But no such acquiescence as is thus required has been shown in this case; the most that is alleged or proved being that Leota Peschier learned of the existence of the 1960 divorce judgment in January of 1976 but did not bring this action to annul it until over one year later, which is not the same thing as executing the judgment or permitting it to be executed. Andrews v. Sheehy, 125 La. 217, 51 So. 122 (1910). A mere failure to act immediately after receiving notice of an invalid judgment does not amount to acquiescence. Wilson v. King, 227 La. 546, 79 So.2d 877 (1955); Termplan Gentilly, Inc. v. Parker, 281 So.2d 163 (La. App. 4th Cir. 1973); Spinks v. Caddo-Bossier Services, Inc., 270 So.2d 604 (La.App. 2d Cir. 1972).
Accordingly, the judgment of the court of appeal is affirmed.
AFFIRMED.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent from the majority opinion.
The trial court judgment, rendered September 17, 1980, in favor of plaintiff, was primarily based on the trial court's determination that Lionel Peschier obtained the 1960 divorce from Leota Peschier by practicing a fraud on the court. In my view that judgment was wrong for the reasons so ably stated by Judge Domengeaux in his dissent to the Court of Appeal judgment: that Leota Peschier's action to have the 1960 divorce judgment declared null because it was procured by fraud and ill practices has prescribed. La.C.C.P. art. 2004.
The Court of Appeal majority apparently likewise found the trial court's reasons for judgment in error since they based their decision, affirming the trial court judgment, on other reasons. The Court of Appeal concluded that the seventeen year old judgment of divorce should be declared null because of a deficiency in the service of process.
This voluminous record contains evidence both in support of and in opposition to the Court of Appeal's and this Court's majority determination that Leota Peschier was not an absentee at the time of the 1960 divorce proceedings. Had this record been made up in a lawsuit against Mr. Peschier during his lifetime, perhaps I too would then agree that plaintiff had carried her burden of proof.
However, that is not the case. Leota Peschier, the deceased's first wife, waited seventeen years after the 1960 divorce judgment was rendered, and waited until after Lionel Peschier's death, before bringing this suit to annul that judgment, which also annuls his sixteen year marriage to Marjorie Peschier. Lionel Peschier, the only person who could have countered Leota Peschier's allegations by testifying concerning his knowledge of his first wife's whereabouts at the time he filed the suit for divorce, had no opportunity to do so (this suit being filed subsequent to his death), with the result being that innocent persons' rights are being affected.
As correctly pointed out by the majority:
There is a strong public policy against disturbing or declaring invalid a judgment of divorce, especially after a long period of time where the marital status of innocent parties who relied on the validity of that judgment would be disturbed, and more particularly where a decree would render innocent parties guilty of bigamy. Wilson v. Calvin, 221 La. 451, 59 So.2d 451 (1952); Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949); Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (1951). Because of this strong public policy and a presumption as to the regularity of the judicial proceedings, plaintiff must prove by clear and convincing evidence the grounds for annulment of the 1960 divorce judgment. Wilson v. Calvin, supra; Logwood v. Logwood, 85 La. 1, 168 So. 310 (1936).
Plaintiff's burden can only be even greater, in a case like the present one, where the suit is brought after the death of the principle person who could have countered the allegations against him.
*929 In my view, for the reasons above expressed, plaintiff has simply not met her burden of proving by clear and convincing evidence the grounds for the annulment of the 1960 divorce judgment.