618 So.2d 444 (1993)
FIRST NATIONAL BANK OF JEFFERSON PARISH
v.
Indiana Francisca Vigil, Wife of/and Allen S. SAMUELS.
No. 93-CA-64.
Court of Appeal of Louisiana, Fifth Circuit.
April 27, 1993.
Marcus L. Giusti, Hannan, Drake & Giusti, Metairie, for plaintiff/appellee.
Thomas E. Schafer, III, New Orleans, for defendants/appellants.
Before GRISBAUM, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This appeal is from a deficiency judgment in favor of the First National Bank of Jefferson Parish and against the debtors.
The Bank held a promissory note executed by Indiana Vigil Samuels and Allen Samuels in the amount of $60,000, along with a collateral mortgage note. The collateral mortgage note was secured by two parcels of unimproved property in St. Tammany Parish. The Bank foreclosed on the property in executory proceedings in St. Tammany, and the two properties, appraised at $30,000, were sold for $25,500 at public auction on May 9, 1990. On October 26, 1990 the Bank filed an ordinary suit against the defendants, seeking a deficiency judgment for the balance of the note. After a trial of the merits, the trial judge found in favor of the Bank and gave oral reasons from the bench. He signed a judgment *445 on February 24, 1992, which awarded to the Bank $60,000, plus interest, costs, and attorney's fees, all subject to a credit of $23,048.18.
The defendants' appeal is based on the premise that the appraisal procedures in the judicial sale of the properties were invalid and negated the Bank's right to a deficiency judgment.[1] The issues raised are: 1) whether the creditor bank had conducted a diligent search to locate the defendants before appointing a curator to represent them in the executory proceedings; 2) whether the Bank's failure to serve upon the defendants (rather than a curator) the notice of seizure and notice to appoint an appraiser bars it from obtaining a deficiency judgment; and 3) whether the appraisal process was conducted in accordance with statutory provisions.

Appointment of curator
When Indiana Samuels and Allen Samuels executed the note in 1986, their mailing address was designated as P.O. Box 7000, Metairie, Louisiana, 70010. In 1988, Allen Samuels furnished the Bank with a financial statement showing his residence address as 2928 Ridgeway Drive, Metairie, Louisiana. In March, 1989, the Bank sent demand letters to both defendants at the Metairie post office box by regular mail and by certified mail. The certified letters were returned marked "Unclaimed," while those sent by regular mail were not returned.
Samuels' business address was listed with the Secretary of State as 2928 Ridgeway Drive. The Bank learned later that Mr. and Mrs. Samuels had separated in December, 1987 and Allen Samuels had moved.
The Bank filed suit on the note in the 24th Judicial District Court on April 10, 1989 and requested service at the Ridgeway Drive address. When Jefferson Parish Sheriff's deputies were unable to make service and a skip-tracer was unable to locate the defendants, the Bank had the ordinary suit dismissed without prejudice.
On July 12, 1989, the Bank filed a petition for executory process in St. Tammany Parish. Alleging that the defendants had apparently left Jefferson Parish and their whereabouts were unknown, the Bank had a curator appointed. On October 16, 1989 counsel for the Bank recalled the curator and canceled the judicial sale after being informed by an attorney representing Samuels in working out other loans that Samuels was not an absentee. The Bank requested service of the notice of seizure and sale and of the notice to appoint appraiser, again at the Ridgeway Drive address, but the deputies' attempts were unsuccessful, as were those of a skip-tracer. The Bank then wrote that attorney, requesting a current address but the attorney responded that he was not representing Samuels in the executory proceedings. On January 9, 1990, the Bank moved to appoint a second curator. The court appointed a Slidell attorney who received service of the notices and proceedings. After three appraisals had been made, the sale took place on May 9, 1990.
La. C.C.P. art. 2674 provides that the court shall appoint an attorney at law to represent an unrepresented defendant in an executory proceeding when the defendant is an absentee. La. C.C.P. art. 5251(1) includes in its definition of "absentee" a person "... whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state;..." See also article 5091.
A defendant who is domiciled in Louisiana qualifies as an absentee only if his whereabouts are unknown to the opposing party and could not have been discovered after a diligent search. [Emphasis supplied.] Peschier v. Peschier, 419 So.2d 923 (La.1982). In Security Homestead Ass'n v. Fuselier, 591 So.2d 335, 338 (La.1991), a *446 suit for deficiency judgment, the Supreme Court reaffirmed its holding in Peschier and said:
... [W]e find the imposition of a diligent search requirement especially warranted in light of Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which held that constitutional due process concerns require reasonable diligence be exercised to locate a party whose address is "reasonably ascertainable." A creditor must make a reasonable and diligent effort to determine the whereabouts of a defendant domiciled in Louisiana to support an allegation that the defendant's whereabouts are unknown and to support the appointment of a curator.
The court held, at 341, that:
... when due to the improper appointment of a curator a defendant receives neither actual nor constructive notice of seizure or notice of the right to appoint an appraiser, the creditor will not be entitled to a deficiency, as the seizure was wrongful, the appraisal was defective and the defendant's due process rights were violated.
Security's efforts to locate the mortgagee's whereabouts were found to be inadequate. The homestead had merely checked the telephone director to verify the service address, when the sheriff's return stated the debtor had moved from that address. Security had his telephone number and could have obtained his new address.
In the case before us a controversy exists regarding the Bank's knowledge of Allen Samuels' residence. Samuels testified that he had separated from his wife in December, 1987 and had moved to an apartment complex he owned at 3207 Belmont Place, Metairie. Although Mrs. Samuels was not served, it is not alleged she also moved, and we conclude that she remained in the matrimonial domicile.
Howard Fussell, a Covington attorney, whom Samuels contacted briefly in September, 1989 and who had reviewed the suit with him, testified that he had recommended that Samuels accept service of the foreclosure and that he had given Samuels' address to the Bank's counsel, Michael Hannan. Hannan denied having received the address and testified that Fussell told him Samuels lived in Metairie but he did not have the exact address.
Samuels admitted in his testimony that his April 7, 1988 financial statement furnished to the Bank gave his address as 2928 Ridgeway Drive but explained that he had just moved out in December, 1987 and was not certain then how long he would remain in the Belmont Place apartment.
Testimony of two Jefferson Parish deputies indicated that they had each attempted service at the Ridgeway address several times, that there were cars in the carport and driveway, but no one answered the door. Damon Daussat, a special process server, testified that he had tried at the Ridgeway address at various times of the day on some thirteen dates in December, 1989. The post office had provided that address, a box number, and a phone number for Samuels' business. The residence appeared to be occupied, as the lawn was cut, there were lights on inside, bottled water had been delivered, and garbage had been collected. He traced the license plate of a car in the driveway to Mr. or Mrs. Samuels. He spoke with neighbors and the postman and was satisfied that Samuels resided there. The curator's report indicated that he had mailed the notice of seizure both to Ridgeway Drive and to the post office box, which letters were returned marked "unclaimed."
The appellant argues that if the Bank had examined the Jefferson Parish court records it would have found the Belmont Place address, at which he was served with four creditors' lawsuits. Hannan testified that he normally does not undertake such a check and the Bank had previously gotten excellent service from the second skiptracer.
The trial court, in ruling from the bench, stated:
The Court finds that the steps taken by F.N.J. to serve Mr. Samuels were reasonable and even went far beyond most of the ones we see for executory process and, for that reason, I find that there was notice and that the deficiency judgment should stand upon that basis. *447 Whether the Bank's efforts constituted a diligent search in compliance with Peschier v. Peschier, supra and Security Homestead Ass'n v. Fuselier, supra is a question of fact, and the credibility of the witnesses is crucial. We find that the trial court's finding as to this issue is not manifestly erroneous and should not be disturbed. Accordingly, the appointment of the curator was valid.

Illegal appraisal
Samuels complains that the mortgaged property was not appraised in accordance with the law; therefore, the effect of the illegal appraisal is the same as if no appraisal had taken place, and the creditor will not be entitled to a deficiency judgment. His specific complaint is that the appraisal should have valued the two lots separately, not in globo.
The Bank chose Jerry Young as its appraiser. He appraised parcel "A," a 2.08 acre plot, at $5,000 and parcel "B," a 6.33 acre plot, at $10,000, for a total value of $15,000. The sheriff appointed Bill McClure as the debtor's appraiser. McClure made an in globo appraisal of $28,000 for the two properties. Because the lower of the appraisals was less than 90% of the higher appraiser's value, the sheriff appointed Eugene Beyl as the third appraiser, whose decision would be final under LSA-R.S. 13:4365.
Beyl determined that the properties were very close in value per acre, approximately $3,500, and multiplied that figure by the total acreage, then rounded off to arrive at $30,000 for the two lots. He testified as to the procedure he followed in making his appraisal and explained as follows:
Also I noted that he paid $27,000.00 for it in 1981, and around 1985 property values kind of peaked in St. Tammany Parish and I estimated according to my experience that property had gone up about forty to fifty percent in value which would put about a $40,000.00 value on it in 1985 when it peaked.
Then sales started to decline and since this was appraised in 1990, I estimated the decline was around 25% which backed it up to about $30,000.00 and I was satisfied with using that method as compared to the other sales that I had found.
Samuels points out that LSA-R.S. 13:4365(C) requires that, "The property seized must be appraised with such minuteness that it can be sold together or separately." He argues that if the properties had been sold separately, more money would have been realized. The jurisprudence on this point is sparse and the appellant relies upon Intern. Harvester Credit Corp. v. Majors, 467 So.2d 1251 (La.App. 2nd Cir.1985), in which six pieces of farm equipment were sold in globo. This case is not definitive of the issue, as it was heard on a motion for summary judgment. The court denied summary judgment and remanded the case, finding that a genuine issue of material fact existed as to whether separate appraisals of the pieces of equipment were possible, pursuant to LSA-R.S. 13:4365.
In Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132 (La.App. 1st Cir.1988), writ denied, 532 So.2d 150 (La. 1988), a 101.20 acre tract, subdivided into lots, was appraised and sold in globo. The court held that various circumstances should be considered in determining the validity of an appraisal that does not list each lot separately. However, it found that the appraisal was fair and correct, where the appraiser had used a per-acre valuation for the lots and then arrived at an in globo appraisal.
In Bank of New Orleans and Trust Co. v. Lambert, 409 So.2d 294, 297 (La.App. 1st Cir.1981), writ denied 413 So.2d 494 (La. 1982), where the mortgagors complained of an in globo sale, the court stated:
A mortgage is by its nature indivisible and prevails over all the immovables subjected to it. LSA-C.C. art. 3282. The mortgagee can execute his mortgage against all or any part of the encumbered property, at his discretion. Stockmeyer v. Tobin, 139 U.S. 176, 11 S.Ct. 504, 35 L.Ed. 123 (1891); Federal Land Bank v. Rester, 164 La. 926, 114 So. 839 (1927); Lawton v. Smith, 146 So. 361, (La.App. 2nd Cir.1933).
The procedural right given to a creditor who seizes property under a mortgage *448 or privilege is consistent with this substantive law. LSA-C.C.P. art. 2295 provides, in pertinent part, as follows:
"[T]he judgment creditor can direct the sale of property on which he has a mortgage, or a privilege other than that resulting from the seizure."
Thus, the Code of Civil Procedure gives a judgment creditor who holds a single mortgage over various pieces of seized property the right to direct the manner of sale. The judgment creditor's right to "direct the sale" includes the right to determine whether the property should be sold separately or in globo.
Samuels admitted at trial that he had found out about the suit from an employee of the St. Tammany courthouse. In September, 1989, he took a copy of the suit to attorney Howard Fussell, who recommended that the defendant accept service of the lawsuit. Samuels then took the file from Fussell to attorney Tom Schafer and authorized him to make an offer of settlement to the attorney for the Bank, which was rejected. He was fully aware that thereafter the foreclosure was ongoing, and if he had accepted service, he could have appointed his own appraiser and requested separate appraisals of the two lots.
We note further that the purpose of minute appraisals under the statute is to protect debtors from unnecessary deficiency judgments by realizing as much money as possible from judicial sales. Intern. Harvester Credit Corp. v. Majors, supra. In this case, Samuels received $25,500, more than two-thirds of the appraisal, and more than the price of $19,000, for which he had produced a signed agreement to purchase when he made an offer of settlement to the Bank. Consequently, we find that Samuels was not penalized by any alleged deficiency in the seizure and sale of his mortgaged property.
For the reasons assigned above, we affirm the judgment below.
AFFIRMED.
NOTES
[1] La.C.C.P. art. 2771 provides:

Unless otherwise provided by law, the creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723. [Emphasis supplied.]