laGOTHARD, Judge.
Plaintiff, Greater New Orleans Homestead, FSB, appeals a summary judgment entered in favor of defendant, Edward L. David. For the following reasons, we affirm.

FACTSIPROCEDURAL HISTORY

On May 9, 1994, Greater New Orleans Homestead, FSB, (“GNO”) provided financing to Donald Rex Gay (“Gay”) for the purchase of certain immovable property located in Jefferson Parish. GNO took a mortgage in the property financed as security for the loan. In his loan application, Gay certified to GNO that there were no judgments outstanding against him. Subsequently, GNO discovered that its mortgage was subordinate to a judicial mortgage created by a default judgment |3rendered against Gay. The default judgment, in the amount of $100,000 plus 11% interest and attorney’s fees, resulted from a suit filed against Gay by the defendant/appellee herein, Edward L. David (“David”). This suit was based on Gay’s failure to pay a promissory note held by David. The default judgment was confirmed on September 5, 1990 and recorded on October 1,1990.
After learning of the superior encumbrance on the mortgaged property, GNO requested that David subordinate his rights to those of the plaintiff. When David declined, GNO filed a petition for nullity, seeking to have the default judgment against Gay set aside. The petition for nullity was filed on July 21, 1994. Previously, however, on July 20, 1994, David began executing the judgment by serving garnishment interrogatories on Hibernia National Bank (“Hibernia”). Hibernia prepared answers to the interrogatories and filed them on that same date. A writ of fieri facias was also issued on that date. On July 22, 1994, a judgment was entered against the garnishee, Gay. In satisfaction of the fifa writ, David recovered $366.48 from Hibernia, less a $25 processing fee.
GNO bases its petition for nullity on a purported technical deficiency concerning the original service on the judgment debtor Gay. In the underlying suit between David and Gay, personal service was not made on Gay. Instead, Gay was served at his domicile by a special process server, who left the citation and petition with one Roy Sehulingkamp (“Sehulingkamp”) at 3012 19th Street, Me-tairie, Louisiana. However, David filed admissions during discovery which revealed that Sehulingkamp was not a resident of 3012 19th Street, Metairie, Louisiana. Thus, GNO argues that the domiciliary service performed on Gay was defective. Because of this apparent defect in the service of Gay, GNO asserts that the default judgment against him is an absolute nullity.
UDavid, on the other hand, argues that Gay acquiesced in the default judgment. In support of his position, David introduced into evidence an affidavit executed by Gay on November 23, 1994. In summary, this affidavit states that Gay: (1) is the person who was the defendant in the earlier suit filed by David; (2) was aware that a default judgment was rendered and confirmed against him and in favor of David; (3) does not now, nor has he ever, protested any purported lack of proper service of process upon him in the suit filed by David; (4) does not now assert any defense to the promissory note that he executed in favor of David and which was the basis of the default judgment; (5) informed David of the existence of the Hibernia account, in an effort to begin to satisfy the judgment; (6) was present in Jefferson Parish during July 20-22, 1994 and was aware that David had garnished his account at Hibernia; (7) was notified by the sheriff of the seizure of the Hibernia account’s balance and did not take any steps to enjoin the seizure; and (8) acknowledged that through his actions he had voluntarily acquiesced in the default judgment.
The parties filed cross motions for summary judgment. On August 25, 1995, the trial court rendered judgment, denying GNO’s motion for summary judgment and granting David’s motion. Thus, GNO’s peti *1081 tion for nullity was dismissed, judgment, GNO has appealed. From this

ISSUES

GNO has raised the following issues for our review: (1) whether the trial court erred in granting David’s motion for summary judgment; and (2) whether acquiescence in a judgment, which was an absolute nullity, relates back to the date of the judgment or to the date of acquiescence, where intervening acts have been filed for public registry.

J¿AW

Summary judgment shall be rendered when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966. Any doubt must be resolved against the mover and in favor of a full trial on the merits. Security Homestead Fed. Sav. Corp. v. Ullo, 589 So.2d 5, 7 (La.App. 5th Cir.1991). Although it may appear unlikely from the documents submitted that one party will prevail at trial, summary judgment cannot be granted if there is any issue of disputed material fact. Dearie v. Ford Motor Co., 583 So.2d 28, 29 (La.App. 5th Cir.), writ denied, 588 So.2d 1117 (La.1991). A fact is material, for purposes of determining a summary judgment motion, “if its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery, or if it potentially ensures or precludes recovery, affects the plaintiffs ultimate success, or determines the outcome of the legal dispute.” Id. at 30. Finally, summary judgment is rarely appropriate when the evidence presented attempts to establish subjective facts such as motive, intent, good faith, knowledge, or malice. Smith v. Estrade, 589 So.2d 1158, 1160 (La.App. 5th Cir.1991).
La.C.C.P. art. 1201 provides that “[citation and service are essential in all civil actions except summary and executory proceedings. ...” Without citation and service, “all proceedings are absolutely null.” Id.; see Peschier v. Peschier, 419 So.2d 923, 927 (La.1982).
Service of process may be either personal or domiciliary. La.C.C.P. art. 1231. “Personal service is made when a proper officer tenders the citation or other process to the person to be served.” La.C.C.P. art. 1232. Domiciliary service, on |6the other hand, “is made when a proper officer leaves the citation or other process at the dwelling house or usual place of abode of the person to be served with a person of suitable,age and discretion residing in the domiciliary establishment.” La.C.C.P. art. 1234.
A final judgment shall be annulled if it is rendered against “a defendant who has not been served with process as required by law and who has not entered a general appear-ance_” La.C.C.P. art. 2002. However, a defendant who “voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.” La.C.C.P. art. 2003.
The general rule is that an absolutely null judgment can be challenged in a collateral proceeding by any person with an interest in the judgment. Wilson v. King, 227 La. 546, 79 So.2d 877, 879 (1955); Led-ford v. Pipes, 507 So.2d 9,10-11 (La.App. 2d Cir.1987); Webster v. Boh Bros. Constr. Co., Inc., 603 So.2d 761, 763-64 (La.App. 4th Cir. 1992). Whether a person has a “real and actual interest” in an action is tested by an exception of no right of action. Ferguson v. Dirks, 95-560 (La.App. 5th Cir. 11/28/95), 665 So.2d 585, 587. That is, an exception of no right of action determines “whether the plaintiff belongs to the particular class to which the law grants a remedy for the particular harm alleged.” Id. Pursuant to La. C.C.P. art. 927(B), an appellate court may, on its own motion, notice a plaintiffs lack of interest to institute a suit.

ANALYSIS

Initially, we note that a question exists as to whether GNO has standing to challenge the default judgment rendered against Gay. See La.C.C.P. art 927(5). As stated above, the general rule is that any party with an *1082 interest in a judgment may |7assert the nullity of that judgment. See supra Wilson; Ledford; Webster. However, the cases relied on by GNO to assert its right of action all involved the original plaintiff or defendant seeking to annul the judgment. The instant case is clearly distinguishable in that GNO is a third party with no connection to the underlying suit between David and Gay.
Our review of the jurisprudence reveals there is authority for allowing a third party to assert the nullity of a judgment even though he was not a party to it. In Tanner v. Travelers Insurance Co., 389 So.2d 721 (La.App. 4th Cir.1980), three attorneys were sued for malpractice. Id. at 722. The alleged malpractice resulted from the dismissal of a case in which the attorneys represented the plaintiff in the malpractice suit. The attorneys sought to annul the judgment of dismissal and thereby remove the grounds for the malpractice action. Originally, the Fourth Circuit held that the attorneys did not have a sufficient interest as to maintain their suit. Id. at 723. However, on rehearing the court concluded that the attorneys were “affected by the judgment and ha[d] at least some interest in having the judgment nullified, such as to confer on them a right of action.” Id. at 724r-25.
Subsequently, in State v. Batchelor, 597 So.2d 1132 (La.App. 1st Cir.), writ denied, 604 So.2d' 964 (La.1992), the First Circuit affirmed a judgment which nullified a support judgment on grounds of fraud and ill practice. In March of 1988, Robert Hamilton (“Hamilton”) was arrested and charged with several violations of Louisiana’s drug laws. Id. at 1133. In April of 1988, the State obtained an injunction which prevented Hamilton from alienating, concealing, or encumbering the assets of a company which he controlled. Thereafter, in January of 1989, Lara Batchelor (“Batchelor”) brought suit against Hamilton on behalf of her minor son, seeking to establish that Hamilton was the father of the child and to obtain support Isfrom him. Batchelor and Hamilton eventually entered into a consent judgment which provided for a support award of $420,000.
In June of 1989, Hamilton was convicted in state court on the drug charges. He also was found to have invested the drug proceeds in the company he controlled. Following the criminal conviction, the State instituted forfeiture proceedings against Hamilton’s assets. However, when the State attempted to seize the assets of the company Hamilton controlled, it discovered that Batchelor had already seized those assets pursuant to the consent judgment. The State then filed a petition to annul the consent judgment entered into by Hamilton and Batchelor. As mentioned earlier, the trial court annulled the judgment on the basis that it had been obtained by fraud and ill practice. Id. at 1134. In affirming the trial court judgment, the First Circuit stated that “[bjecause the State has an interest in the property affected by the support judgment, it is clear that it is a proper party to bring an action of nullity.” Id. at 1135.
We find the instant case to be distinguishable from both Tanner and Batchelor, supra. In Tanner, the challenged judgment served as the basis for a malpractice action against the attorneys who were seeking to annul it. Further, although the attorneys were not parties to the suit which produced the judgment, they were obviously involved in the earlier proceeding in their role as plaintiffs counsel. Here, GNO was a complete stranger to the suit between David and Gay. Moreover, the judgment entered against Gay can in no way be said to create liability on the part of GNO. In fact, the judgment against Gay, viewed in a narrow sense, has no effect whatsoever on GNO. It is only the judicial mortgage created by the recordation of the judgment that can be said to implicate GNO’s interest.
| gSimilarly, Batchelor is distinguishable from the instant case in that it involved the annulment of a judgment based upon fraud. Here, no allegation of fraud has been made by GNO, nor would one be supported by the record. Additionally, in Batchelor the State had commenced a criminal proceeding against Hamilton before the civil suit against him was filed. Here, of course, GNO had no involvement with either David or Gay prior to filing the petition for nullity some four years after the rendition of the original judgment.
*1083 In short, we feel that GNO lacks a sufficient “real and actual interest” in the default judgment rendered against Gay as to support the instant nullity action. Nevertheless, we will address the issues raised by GNO, as our resolution of these also supports an affir-mance of the judgment.
The first issue raised by GNO is whether the trial court was correct in granting David’s motion for summary judgment. The record reveals that the domiciliary service made on Gay was defective because it was not served on a person of “suitable age and discretion residing in the domiciliary establishment.” La.C.C.P. art. 1234. Thus, the default judgment rendered against Gay is an' absolute nullity. La.C.C.P. 1201. However, Gay is precluded from asserting the nullity of the judgment if he acquiesced in it or was in the parish when it was executed and did not attempt to enjoin its enforcement. La.C.C.P. art. 2003. GNO, which is standing in the shoes of Gay, is likewise precluded from asserting the nullity of the judgment if Gay is determined to have acquiesced in it. Accordingly, the crucial question is whether Gay acquiesced in the default judgment.
The affidavit prepared by Gay unequivocally establishes that he did in fact acquiesce in the judgment. The affidavit states that Gay knew of the judgment, was in the parish at the time of the execution of the judgment, knew of its execution by 110David, and took no steps to stop the execution. These undisputed material facts demonstrate that Gay acquiesced in the judgment and therefore support the trial court’s granting of summary judgment.
GNO relies on Custom Acceptance Corp. v. Paul, 376 So.2d 510 (La.App. 4th Cir.1979) in support of its argument that summary judgment is inappropriate in this ease. In Custom Acceptance, the Fourth Circuit held that the issuance of a fifa writ or even seizure under that writ cannot be “execution” within the meaning of La.C.C.P. art. 2003 because “one never served with process might have no notice until the seizure occurs and seizure cannot rationally constitute both the first notice of execution and the extinguishment of the right to enjoin execution.” Id. at 513.
We find Custom Acceptance to be distinguishable from the facts presented here. In Custom Acceptance, the party challenging the judgment was the original defendant. There was no evidence in the record that the defendant had ever received notice of the suit against her. Here, of course, a third party is challenging the judgment, not the original defendant. Moreover, Gay’s affidavit establishes that he did know of the judgment against him. Thus, unlike the defendant in Custom Acceptance, Gay’s first notice of the judgment was not its execution. Accordingly, we conclude that Gay’s affidavit is sufficient to establish acquiescence pursuant to La.C.C.P. art. 2003.
GNO further argues that summary judgment is inappropriate because Gay’s affidavit attempts to establish numerous subjective facts, such as motive and intent. See Smith, supra. However, we agree with David that the affidavit establishes objective, rather than subjective, facts. That is, the affidavit describes the actions taken by Gay in response to the judgment—namely that he did not protest the adequacy of service; he did not assert any defense to the promissory note; and he ludid not take any steps to enjoin the execution of the judgment. We agree with the trial court that these objective facts establish acquiescence in the judgment on the part of Gay. Based on the foregoing, we hold that the trial court did not err in granting summary judgment for David.
The second issue raised by GNO is whether Gay’s acquiescence in the judgment relates back to the date of the original judgment or to the time of the acquiescence. The default judgment was recorded on October 1, 1990, thereby creating a judicial mortgage in favor of David. La.C.C. art. 3300. Gay granted GNO its mortgage on May 9, 1994. The execution of the judgment, which Gay acquiesced in, occurred from July 20-22, 1994. Thus, at the time GNO’s mortgage came into existence, the judgment against Gay was absolutely null. Based on this fact, GNO asserts that Gay’s acquiescence in the judgment should not relate back to the time the judgment was recorded. Instead, GNO argues that Gay’s acquiescence should make the judgment effective as of the date of the *1084 acquiescence, or July 20-22, 1994. Then, of course, GNO’s mortgage would prime David’s judicial mortgage. See La.C.C. art. 3308.
A judgment of a trial court carries a presumption of correctness. Craig v. Hous. Auth. of New Orleans, 482 So.2d 148 (La. App. 4th Cir.1986). Thus, the default judgment rendered against Gay was presumptively correct when it was recorded by David. In addition, the default judgment was valid on its face. That is, at the time of its recor-dation, there was no indication that the judgment was anything other than valid. It was only several years later that the defect-in service was discovered. The onus was on GNO, as the party loaning money to Gay, to determine if there were any existing mortgages against Gay that would prime its own. As GNO failed to properly investigate the public records, it is the party that |12must bear the loss, if any, arising therefrom. We note that a different question would be presented if there was evidence in the record of collusion between David and Gay. However, on the record before us no such showing has been made. Accordingly, we conclude that Gay’s acquiescence in the judgment relates back to the date that the judgment was rendered.
In essence, GNO requests that we absolve them of blame for failing to discover David’s properly recorded judicial mortgage. This we decline to do. The purpose of the public records doctrine is to provide notice to third parties of rights in or to immovables, as well as to rank those rights. See La.C.C. art. 3308 et seq. The result sought by GNO is entirely at odds with the purpose of the public records doctrine. Therefore, we reject GNO’s argument and choose instead to vindicate the public records doctrine.
Based on the foregoing, the judgment appealed from is affirmed.
AFFIRMED.
CANNELLA, J., concurs.