801 So.2d 448 (2001)
Natalie C. CHATONEY
v.
SAFEWAY INSURANCE COMPANY.
No. 00-1189.
Court of Appeal of Louisiana, Third Circuit.
June 13, 2001.
Writ Denied November 2, 2001.
*449 Barry A. Roach, Attorney at Law, Lake Charles, LA, Counsel for Plaintiff/Appellee, Natalie C. Chatoney.
Robert Voitier, Jr., Boone, Wilkes & Brady, LLP, Attorney at Law, Lafayette, LA, Counsel for Defendant/Appellant, Safeway Ins.
Edward K. Bauman, Attorney at Law, Lake Charles, LA, Curator for Jeff Brown.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS and ELIZABETH A. PICKETT, Judges.
PICKETT, Judge.

FACTS
The accident giving rise to this litigation occurred at the intersection of Sale Road and Hodges Street in Lake Charles, Louisiana, on August 7, 1998. A vehicle driven by Jeff Brown struck the rear of Natalie C. Chatoney's 1986 Cadillac Sedan DeVille as she waited to make a left turn from Sale Road onto Hodges Street. The impact of the collision propelled Ms. Chatoney's vehicle into the opposite lane of Sale Road, where a 1993 Volvo driven by Jonathan Walker collided with Ms. Chatoney's Cadillac. Both Ms. Chatoney's and Mr. Walker's vehicles sustained damage as a result of this collision.
Mr. Brown did not own the vehicle he was driving, but Safeway Insurance Company of Louisiana (Safeway) provided liability insurance coverage for the vehicle. Thus, Mr. Brown was an omnibus insured under the Safeway policy.
Ms. Chatoney filed suit against Jeff Brown and Safeway to recover damages she sustained in the automobile accident. Additionally, she sought recovery against Safeway for its alleged failure to properly adjust her claim as required by La.R.S. 22:658 and La.R.S. 22:1220. Safeway timely answered Ms. Chatoney's October 19, 1998, suit.
Attempts to serve Jeff Brown proved unsuccessful. On March 8, 1999, Ms. Chatoney *450 sought and received from the trial court an appointment of an attorney to represent Mr. Brown. The appointed attorney filed a general denial answer.
Immediately before the trial on the merits began, counsel for Safeway and the appointed attorney filed separate handwritten pleadings entitled "EXCEPTION OF LACK OF PERSONAL JURISDICTION AND/OR INSUFFICIENCY OF SERVICE OF PROCESS," wherein each attorney asserted that the trial court did not have jurisdiction over Mr. Brown and that service of process on Mr. Brown was insufficient. The trial court took the exceptions under advisement and began the trial. Ultimately, the trial court denied both motions.
Following a trial on the merits, the trial court found Mr. Brown at fault in causing the accident and found that Ms. Chatoney suffered the following damages: $20,000.00 in general damages, $5,186.25 in medical expenses, $1,008.00 in lost wages, $600.00 for the loss of the use of her vehicle, and $4,000.00 in property damages to her vehicle. The trial court rendered judgment against Mr. Brown to the full extent of Ms. Chatoney's damages and against Safeway to the extent of its policy limits: $10,000.00 in general damages and $1,518.01 as Ms. Chatoney's prorated share of the property damages coverage. The trial court rejected Ms. Chatoney's demand against Safeway for statutory penalties and attorney fees.
From this judgment, Mr. Brown filed this appeal. Ms. Chatoney answered the appeal, addressing only the trial court's denial of her claim for statutory penalties and attorney fees against Safeway.

DISCUSSION

EXCEPTION OF NO RIGHT OF ACTION
Mr. Brown's appeal was not filed by his appointed attorney, but was filed by counsel for Safeway. Ms. Chatoney initially responded to the appeal by filing an exception of no right of action in which she asserted that Safeway had "no right of action or interest to institute this [appeal] due to lack of procedural capacity to act on behalf of [Mr. Brown]." Ms. Chatoney asserts that Safeway had no attorney-client relationship with Mr. Brown because it had not represented him at the trial level and had judicially admitted it did not know of his whereabouts.
Safeway responded to the exception by asserting that it had both a right and a duty under its policy of liability insurance to defend Mr. Brown. The policy provides that Safeway "shall defend any suit alleging... bodily injury or property damage and seeking damages which are payable under the terms of this policy" with respect to an insured under the policy. It further provides that the definition of "insured" includes the named insured as well as "any other person using [the insured automobile] to whom the named insured has given permission, provided the use is within the scope of such permission."
Safeway was placed in an unusual and difficult position. Its duty to defend under its policy "is not qualified, limited or restricted in any manner whatsoever." Reichert v. Continental Ins. Co., 290 So.2d 730, 733 (La.App. 1 Cir.), writ denied, 294 So.2d 545 (La.1974). Had Safeway answered on behalf of Mr. Brown at the trial level it would have waived the personal jurisdiction issue for him. Its duty to defend at the trial level amounted to little more than protection of his personal jurisdiction issue for him. When this defense failed, Safeway was then required to consider its obligation toward Mr. Brown in this appeal. "[An] insurer's obligation to defend includes the *451 duty to appeal judgment adverse to the insured where there appears reasonable grounds for taking an appeal." Id.
While Safeway must exhaust its policy limits in payment to Ms. Chatoney, Mr. Brown has reasonable grounds to take an appeal. Safeway's obligation under its insurance policy requires it to protect those reasonable grounds. We find no merit in Ms. Chatoney's exception of no right of action and will consider the merits of Mr. Brown's appeal.

PERSONAL JURISDICTION ISSUE
Appellant argues two assignments of error. First he argues the trial court erred by finding it had personal jurisdiction over Jeff Brown and, second, the trial court erred by finding that Jeff Brown had notice of the litigation pending against him as required by La. Const. art. I, § 2, and by the Fourteenth Amendment to the United States Constitution.
Officer Mike Weaver of the Lake Charles Police Department investigated the accident and testified that he recorded Mr. Brown's address on his accident report as 1613 Clover Street in Lake Charles. He testified he normally obtained such information from an individual's driver's license.
After suit was filed, the Calcasieu Parish Sheriff's Office attempted service on Mr. Brown on October 23, 1998, and again on October 26, 1998, and filed its return with the notation "unable to locate." The Sheriff's return contains a typed address of "1613 Clover Street," the address provided by appellee's counsel in its original petition. That address is marked through with a pen and, written next to it, is "2126 6th St." The sheriff's return does not indicate whether the officer attempted to serve Mr. Brown at one or both addresses. The trial court made a finding of fact that Mr. Brown in fact was carrying a Louisiana driver's license and was residing at the Clover St. address at the time of the accident. The record supports that finding.
On March 8, 1999, an attorney was appointed to represent Mr. Brown pursuant to the provisions of La.Code Civ.P. art. 5091(A)(1)(a). The appointed attorney was personally served by the sheriff's office on March 26, 1999.
On April 9, 1999, the appointed attorney filed an answer wherein he asserted that despite diligent efforts he had been unable to locate Mr. Brown. He asked to be relieved of his responsibilities in connection with this lawsuit, however, no action was taken on that request. The appointed attorney had filed an advertisement in the local newspaper seeking information as to the whereabouts of Mr. Brown. He had received no information.
On April 27, 1999, the appointed attorney filed an amended answer wherein he again stated he was unable to locate Mr. Brown. He withdrew his request to be relieved of his appointment and entered a general denial as to the allegations of the petition.
Not until immediately prior to trial on the merits did the appointed attorney and counsel for Safeway file an "EXCEPTION OF LACK OF PERSONAL JURISDICTION AND/OR SUFFICIENCY OF SERVICE OF PROCESS." The trial court ultimately rejected this exception.

TIMELINESS OF EXCEPTIONS
Exceptions of lack of personal jurisdiction and insufficiency of service of process are declinatory exceptions. La.Code Civ.P. arts. 6(A)(3), 925, and 928 provide that declinatory exceptions must be filed prior to or in the answer to a suit or they are waived.
La.Code Civ.P. art. 6 provides in pertinent part:

*452 A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
. . . .
(3) The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.
La.Code Civ.P. art. 925 provides in pertinent part:
A. The objections which may be raised through the declinatory exception include but are not limited to the following:
. . . .
(2) Insufficiency of service of process
. . . .
(5) The court's lack of jurisdiction over the person of the defendant.
La.Code Civ.P. art. 928 provides as follows:
A. The declinatory exception and the dilatory exception shall be pleaded prior to or in the answer....
The declinatory exceptions filed in the instant matter were filed subsequent to filing both an answer and an amended answer. Indeed, they were filed immediately prior to commencement of trial. Because they were untimely filed, these exceptions are waived. We find no exception under our law which would apply to litigation wherein counsel is appointed by the court rather than retained. Because we find the exception of lack of personal jurisdiction and the exception of sufficiency of service of process were waived because they were not filed timely and in accordance with the provision of La.Code Civ.P. arts. 6, 925, and 928, we will not consider the merits of those exceptions.

ANSWER TO APPEAL FILED BY MS. CHATONEY.
In her answer to Mr. Brown's appeal, Ms. Chatoney asserts that the trial court erred in not awarding her penalties and attorney fees for the arbitrary and capricious failure of Safeway to abide by the mandates of La.R.S. 22:658 and La.R.S. 22:1220.
La.R.S. 22:658(A)(3) provides in part:
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant ... Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
La.R.S. 22:658(A)(3) requires "that the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." McClendon v. Economy Fire & Cas. Ins. Co., 98-1537, p. 7 (La.App. 3 Cir. 4/7/99); 732 So.2d 727, 731. "[S]imply opening a file does not satisfy the requirement of La.R.S. 22:658(A)(3)that the insurer initiate loss adjustment." Id.
In this case, the accident occurred on August 7, 1998, and Claude LeBas, a Lafayette, Louisiana, insurance adjuster for Safeway, initially received the accident file on August 12, 1998, giving him notice of Ms. Chatoney's property damage claim. Mr. LeBas initiated his investigation on the same day and very quickly concluded that Mr. Brown caused the accident. By August 17, 1998, Mr. LeBas had received a property damage estimate on Ms. Chatoney's *453 vehicle, establishing that it was a total loss. Three days later, on August 20, 1998, he received a property damage estimate on Mr. Walker's vehicle, indicating that it too was a total loss. According to Mr. LeBas, he did not offer Ms. Chatoney any amount for her damages because Mr. Walker had indicated his intent to obtain payment for his property damage from State Farm, his insurance carrier. Because Mr. Walker chose to do so, Mr. LeBas felt he had to wait to hear from State Farm in order to know how to prorate the policy limits since the combined property damage exceeded Safeway's policy limits. Mr. LeBas finally received the appropriate documentation from State Farm on December 17, 1998, wherein State Farm asserted that its subrogation claim was $13,243.64. Despite having State Farm's claimed subrogation amount in mid-December of 1998, Mr. LeBas did not offer to settle Ms. Chatoney's property damage claim until June 16, 1999, at which time he offered her $1,700.00. On June 24, 1999, he issued a check to State Farm in the amount of $8,232.99, representing what he believed to be State Farm's prorated share of the policy limits. Mr. LeBas did not remember the reason for the delay between receipt of the State Farm subrogation and the attempt to settle the claims. He testified that he believed the delay was due to the necessity of presenting the documentation to defense counsel since suit had already been filed.
Although Safeway did delay in paying Ms. Chatoney, the record supports that Mr. LeBas took substantive and affirmative steps, within fourteen days of receipt of notice, to accumulate facts necessary to evaluate the claim. However, Ms. Chatoney contends that the phrase "initiate loss adjustment" means to "begin settlement of a claim or debt in a case in which the amount involved is uncertain." We disagree. La.R.S. 22:658(A)(3) requires the insurer to "initiate loss adjustment" within fourteen days, "not that the claim be completely resolved or paid within that time period," Moore v. Rowland, 32-644, p. 4 (La.App.2 cir. 3/1/00); 753 So.2d 411, 414, and not that settlement offer be initiated. It is La.R.S. 22:658(A)(4) that requires the insurer to "make a written offer to settle" within thirty days of receiving satisfactory proof of loss. However, La.R.S. 22:658(A)(4) is not a basis for a penalty action by a third party. See La.R.S. 22:658(B); Theriot v. Midland Risk Ins. Co., 694 So.2d 184; Moxley v. Cole, 97-1582 (La.App. 3 Cir. 2/3/99); 736 So.2d 249, writ denied, 99-0632 (La.5/7/99); 740 So.2d 1284. We find no manifest error in the trial court's rejection of penalties and attorney fees under La.R.S. 22:658.
Ms. Chatoney also contends that Safeway violated La.R.S. 22:1220(B)(1), which states:
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
Specifically, Ms. Chatoney alleges that Safeway misrepresented that her property damage claim could not be adjusted until it received State Farm's subrogation claim and Safeway determined what State Farm had paid to the Walkers pursuant to their collision policy. The trial court found that Safeway did not misrepresent anything factually about coverage. We agree. Safeway merely represented its position for the delay in adjusting the claimthis is not tantamount to a misrepresentation of a fact or policy provision related to coverage. Thus, we affirm the *454 trial court's denial of penalties and attorney fees under La.R.S. 22:1220.

CONCLUSION
The exceptions of lack of personal jurisdiction and insufficiency of service of process were untimely and therefore waived. We find no error in the trial court's refusal to award penalties and attorney's fees.
AFFIRMED.
PETERS, J., dissents and assigns written reasons.
PETERS, J., concurs in part and dissents in part.
I agree with the majority in all respects except the conclusion that the trial court had personal jurisdiction over Jeff Brown sufficient to render a money judgment against him. In affirming the trial court on this issue, the majority concludes that the answers filed by Mr. Brown's appointed attorney constituted a waiver of the exceptions of lack of personal jurisdiction and insufficiency of service of process. Had the answer been filed by Mr. Brown's personal attorney, or even by Safeway Insurance on behalf of Mr. Brown, I would agree. However, I conclude that the appointment of the attorney for Mr. Brown was invalid in the first place such that the attorney's answer on behalf of Mr. Brown could not operate to waive the exceptions available to Mr. Brown. In fact, any action by the attorney on behalf of Mr. Brown could not constitute a waiver of personal jurisdiction over him. The majority does not address this issue.
In his two assignments of error, Mr. Brown asserts that the trial court erred in rejecting these exceptions, finding that it had jurisdiction over him and concluding that he did have notice of the litigation as required by La. Const. art. I, § 2 and U.S. Const. amend. XIV, § 1. These two constitutional provisions prohibit, among other things, the taking of one's property without due process.
All the evidence in the record points to a conclusion that Mr. Brown was domiciled in Louisiana at the time of the accident, and the claim against him is a personal action "brought to enforce an obligation against [him], personally and independently of the property which he may own, claim, or possess." La.Code Civ.P. art. 422. Therefore, one cannot dispute that the trial court had original jurisdiction to hear this civil matter. La. Const. art. V, § 16(A). However, a trial court must also have authority to exercise personal jurisdiction over a defendant before a judgment can properly be rendered against him. The exercise of personal jurisdiction over a defendant requires one of the following:[1]
(1) The service of process on the defendant, or on his agent for the service of process.
(2) The service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state.

(3) The submission of the party to the exercise of jurisdiction over him personally by the court, or the waiver of objection to jurisdiction by failure to timely file the declinatory exception.
La.Code Civ.P. art. 6(A)(1)-(3) (emphasis added).
The only possible basis for a valid exercise of personal jurisdiction over Mr. Brown in this case lies under La.Code Civ.P. art. 6(A)(2). Louisiana Code of Civil *455 Procedure art. 5091(A)(1)(a) provides in part that "[t]he court shall appoint an attorney at law to represent the defendant... when[][i]t has jurisdiction over the person ... of the defendant ... and the defendant is[][an] ... absentee who has not been served with process ... and who has not waived objection to jurisdiction." (Emphasis added.) Included within the definition of "absentee" is "a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state." La.Code Civ.P. art. 5251(1) (emphasis added). It is the "diligent effort" requirement that I find lacking in this appeal. If the "diligent effort" requirement is not met, then the service on the court-appointed attorney is improper.
As a general rule, the responsibility for effecting service rests with "the sheriff of the parish where service is to be made or of the parish where the action is pending." La.Code Civ.P. art. 1291. As proof of his efforts, "[t]he sheriff shall endorse on a copy of the citation or other process the date, place, and method of service and sufficient other data to show service in compliance with law." La.Code Civ.P. art. 1292. When returned to the clerk's office, this copy of the citation "shall be considered prima facie correct." Id. While provisions for appointment of a private process server exist in the event a sheriff is unsuccessful in making service, these provisions are not mandatory. La.Code Civ.P. art. 1293.
Although the sheriff's return is prima facie proof of the sheriffs efforts, it does not in and of itself satisfy the "diligent effort" requirement imposed on the one requesting service. See Security Homestead Ass'n v. Fuselier, 591 So.2d 335 (La. 1991). In that case, the judgment creditor attempted to obtain a deficiency judgment against a defendant. When service of citation was not accomplished by the sheriff's efforts on the underlying executory proceeding, the judgment creditor served the required notices of seizure through a court-appointed attorney. After the property was sold, the judgment creditor brought a deficiency judgment action against the defendant personally. In reviewing the judgment, the supreme court stated the following:
The term absentee is defined by LSA-C.C.P. Art. 5251(1) as follows:
"Absentee" means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown. (Emphasis supplied).
We previously have construed the underscored language to mean that a party seeking the appointment of a curator to represent a Louisiana domiciliary, such as Fuselier, must establish not only that his whereabouts are unknown, but also that his whereabouts "could not have been discovered after a diligent search." Peschier v. Peschier, 419 So.2d 923, 926 (La.1982). While the court of appeal questioned our imposition of an additional requirement of a diligent search and suggested that by imposing this additional requirement we may have misread the disjunctive "or" in LSA-C.C.P. Article 5251(1) as a conjunctive "and," we reaffirm our statements in Peschier as correctly setting forth the requirements *456 for appointing a curator for a Louisiana domiciliary. Moreover, we find the imposition of a diligent search requirement especially warranted in light of Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which held that constitutional due process concerns require reasonable diligence be exercised to locate a party whose address is "reasonably ascertainable." A creditor must make a reasonable and diligent effort to determine the whereabouts of a defendant domiciled in Louisiana to support an allegation that the defendant's whereabouts are unknown and to support the appointment of a curator.
Id. at 338-39.
The supreme court concluded:
Substantively, Security failed to comply with the diligent search requirement set forth in Peschier, supra. Indeed, the record reflects that Security's efforts to locate Fuselier's whereabouts consisted of simply checking the local telephone directory to verify the service address of 630 Arlington Street, which the sheriffs returns clearly indicated was no longer correct. The sheriff's return representing that the defendant had moved from the Arlington Street address was not sufficient to establish that his whereabouts were unknown. As Fuselier suggests, Security could have simply telephoned him at his listed phone number, as it did to arrange for his attendance at the September 1987 meeting only two to three months before the executory proceedings were instituted. The evidence does not indicate that Security, after learning that Fuselier was no longer at the Arlington Street address, made any effort to determine his current address. As Security failed to conduct a diligent effort or search to locate Fuselier, it cannot be said that his whereabouts were unknown and that he was an absentee. The curators' appointments were improper, and service of the notices of seizure upon the curators was therefore improper and defective.
Id. at 339 (footnote omitted).
The record contains no evidence that Ms. Chatoney did anything other than rely on the address recorded by Officer Weaver. When service at that address proved unsuccessful, Ms. Chatoney made no effort to determine Mr. Brown's current address, failing to even attempt to obtain information from Mary Landry, who had loaned Mr. Brown her vehicle. Considering the decision in Security Homestead Association, I conclude that Ms. Chatoney did not satisfy the "diligent effort" requirement necessary for the appointment of an attorney to represent Mr. Brown. Therefore, the attorney appointment was improper such that service of process on the attorney could not serve as a basis for the exercise of personal jurisdiction over Mr. Brown. Accordingly, it was necessary to serve process on Mr. Brown himself, which was not done.
Louisiana Code of Civil Procedure art. 1201(A) provides that "[c]itation and service thereof are essential in all civil actions except summary and executory proceedings and divorce actions under Civil Code Article 102. Without them all proceedings are absolutely null." The citation form "must be accompanied by a certified copy of the petition" and must contain certain specific information giving notice to the defendant. La.Code Civ.P. art. 1202. Louisiana Code of Civil Procedure art. 2002(A)(2) provides in part that a final judgment shall be annulled if rendered against a defendant who has not been served with process. Thus, due process requires service of citation upon the defendant before a judgment may be rendered against him. Since Mr. Brown was not *457 properly served with process, I would conclude that the judgment against him is absolutely null and would vacate the judgment.
NOTES
[1] I note that La.Code Civ.P. art. 6 was amended by Acts 1999, No. 1263, § 1, effective January 1, 2000, but this amendment would not materially affect the outcome of this case were it applicable.