799 So.2d 793 (2001)
Rachael HOLLIER and Chad Matt
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Mona Bernard.
No. 01-0592.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
*794 J. Clemille Simon, J. Quention Simon, Lafayette, LA, Counsel for Plaintiffs/Appellants: Rachael Hollier and Chad A. Matt.
*795 Preston D. Cloyd, Cloyd, Wimberly & Villemarette, L.L.C., Lafayette, LA, Counsel for Defendants/Appellees: State Farm Mutual Automobile Insurance Company and Mona Bernard.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS and MICHAEL G. SULLIVAN, Judges.
ULYSSES GENE THIBODEAUX, Judge.
Plaintiffs, Rachael Hollier and Chad A. Matt, brought suit against State Farm Mutual Automobile Insurance Company and its insured, Mona Bernard, to recover damages for personal injuries and property damages they sustained in an automobile accident. Ms. Hollier and Mr. Matt also sought an award of penalties pursuant to La.R.S. 22:1220 and 22:658. The plaintiffs appeal the trial court's refusal to assess penalties against State Farm as well as the amount of general and exemplary damages awarded by the trial court.
We amend the trial court judgment to increase the general damage award to Ms. Hollier from $15,000 to $30,000 and increase the general damage award to Mr. Matt from $7,000 to $20,000. We find that State Farm failed to initiate loss adjustment of these claims within fourteen days of notification in violation of La.R.S. 22:658(A)(3) and award Ms. Hollier and Mr. Matt $5,000 each in penalties pursuant to La.R.S. 22:1220(C). Finally, we increase the exemplary damage award to Mr. Matt from $5,000 to $10,000.

I.

ISSUES
We shall consider whether the trial court erred in refusing to award penalties pursuant to La.R.S. 22:1220 and La.R.S. 658(A)(3). We shall also consider whether the trial court abused its discretion in its award of general and exemplary damages.

II.

FACTS
The parties do not dispute how the accident occurred. On the night of June 19, 1998, the vehicle being driven by Ms. Hollier, with Mr. Matt as a guest passenger, was struck head-on by Ms. Bernard's vehicle. Ms. Bernard was intoxicated.
Ms. Hollier had to be cut from the seat-belt by paramedics. She remembered being in pain. Ms. Hollier was put in braces and put into an ambulance. Mr. Matt testified that the rescue workers had to pry the car door open to get him out. Both Mr. Matt and Ms. Hollier were transported to University Medical Center from the accident scene. Ms. Hollier testified that she suffered neck pain, a lacerated liver, an enlarged spleen and nerve damage in her right knee as well as numbness in her left foot. Ms. Hollier was admitted to the hospital that night and was discharged on June 26, 1998. Ms. Hollier's follow up treatment was conducted by Dr. John E. Cobb, an orthopedic surgeon, whom she saw on July 6, 1998.
Mr. Matt testified that he suffered from a laceration and bruising to his chest, lower ribs, one of his elbows, and a knee. He also sustained a cut above his eye as well as a strain/sprain to his knee, his sternum and his side. Mr. Matt further testified that the accident aggravated a genetic condition he has with his lower back.
The parties stipulated that Ms. Bernard was the sole cause of the accident due to her intoxication level of .231 at the time of the accident. The parties further stipulated that Ms. Hollier incurred medical special damages in the amount of $10,158.31 and Mr. Matt incurred medical special damages in the amount of *796 $4,255.19. The parties also stipulated as to the value of other items of personal property damaged in the accident in the amount of $3,058.71.
On July 23, 1998, the plaintiffs sent a letter to State Farm confirming a conversation on that date regarding State Farm's refusal to compensate Mr. Matt and Ms. Hollier for the damage to their property other than the vehicle. The trial court awarded the following damages to Ms. Hollier:

A. Medical Expenses: $10,158.31
B. Lost Wages: 960.40
C. General Damages: 15,000.00
D. Exemplary Damages: 10,000.00
TOTAL AWARD: $36,118.71

To Mr. Matt, the trial court awarded the following damages:

A. Medical Expenses: $ 4,255.19
B. Lost Wages: 968.00
C. General Damages: 7,000.00
D. Exemplary Damages: 5,000.00
TOTAL AWARD: $17,228.19

The trial court also awarded the plaintiffs the balance of the State Farm policy limits of $2,561.25 to compensate them for damage to the property that was inside the vehicle at the time of the accident. Further, the trial court ordered the defendant, Ms. Bernard, to pay the plaintiffs the amount of $495.68. The trial court denied the plaintiffs' claims for penalties pursuant to La.R.S. 22:658 and 22:1220. It is from this judgment that plaintiffs appeal the trial court's failure to award penalties and the amount of general damages.

III.

LAW AND ARGUMENT

Failure to Initiate Loss Adjustment Under La.R.S. 22:658 and La.R.S. 22:1220
The plaintiffs contend that the trial court erred in refusing to award penalties pursuant to La.R.S. 22:658(A)(3), that provides as follows:
Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant.... Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.
The plaintiffs argue that State Farm failed to initiate loss adjustment of their property damage claims within fourteen days after notification of loss. They explain that a letter dated July 23, 1998, confirming a telephone conversation of that same date for payment of the personal property damaged in the car accident, was received by State Farm on July 23, 1998 by fax transmission. Correspondence from State Farm dated July 24, 1998, stated:
I have already advised you that we have a limited policy in the amount of $25,000 and we have six people involved in this accident along with two vehicles. I previously informed you that the other vehicle involved has a value of $15,000 to $20,000 and has been declared a total loss by Allstate. I am awaiting their subrogation. My intentions in this matter are to handle the damages to the two vehicles first and then if money is still available to handle the personal items that were damaged in the accident.
Nothing else was done by State Farm with respect to the payment of the plaintiffs' personal property damaged in the accident.
Upon our review of the record, we find that the trial court erred in refusing to award penalties. Louisiana Revised Statutes 22:658(A)(3) requires that the insurer initiate loss adjustment of a claim within fourteen days after notification of *797 the loss. To initiate loss adjustment requires that "the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." McClendon v. Economy Fire & Cas. Ins. Co., 98-1537 (La.App. 3 Cir. 4/7/99); 732 So.2d 727, 731. In this case, there is no evidence that State Farm took any substantive action within fourteen days after notification of the plaintiffs' personal property damage claim. Moreover, the letter of July 24, 1998, reveals that State Farm was going to deal with the damaged personal property only after the other property damage claims were handled. Before receiving the plaintiffs' letter on July 23, 1998, State Farm paid $4,823.82 for the plaintiffs' property damage claim. Under the worst of circumstances, State Farm's policy would not have been exhausted upon payment of Allstate's subrogation claim. Unlike the situation in Chatoney v. Safeway Insurance Co., 00-1189 (La.App. 3 Cir. 6/13/01); 801 So.2d 448, where the policy limits had been exhausted and steps were taken to evaluate the claim, State Farm in this case did nothing with respect to the plaintiffs' personal property loss, even with a residual of insurance policy property damage funds available. We note that it appears that State Farm merely opened a file regarding the plaintiffs' personal property damage claim. We further note that opening a file regarding the claim does not satisfy the requirement of La.R.S. 22:658(A)(3) that the insurer initiate loss adjustment. McClendon, 732 So.2d 727. As State Farm failed to initiate loss adjustment within fourteen days after notification of the loss, we conclude that the penalties provided in La.R.S. 22:1220 are applicable.
Louisiana Revised Statutes 22:1220(C) provides: "[T]he claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." "[T]he penalty provision of La.R.S. 22:1220(C) is applicable only after a showing of damages actually suffered as a result of the breach of the duties to adjust claims fairly and promptly and to make reasonable efforts to settle claims with the claimant." Hall v. State Farm Mut. Auto. Ins. Co., 94-867, p. 7 (La.App. 3 Cir. 5/31/95); 658 So.2d 204, 208. The amount of penalties is not based upon the amount of damages claimed or awarded in damages but the amount of damages sustained by the breach. "If there are no damages proven as a result of the breach itself, then the maximum amount that can be awarded is $5,000.00 in penalties." Id. We further note that each claimant in this case is entitled to an award of penalties because La.R.S. 22:658(A)(3) specifically refers to a "claimant" regardless of whether the claimant is a named insured on the insurance contract. Rogers v. Commercial Union Ins. Co., 01-443 (La.App. 3 Cir. 10/3/01); 796 So.2d 862.

Damages

General
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), the supreme court clarified the standard of review in instances in which an appellate court questions the adequacy of the trial court's monetary award. In such instances, the reviewing court may disturb the award only after finding an abuse of discretion and then only to the extent of raising or lowering it to the nearest point within reasonable discretion. Id.
The trial court awarded Ms. Hollier $15,000 in general damages and Mr. Matt $7,000 in general damages. After the accident, Ms. Hollier was taken by ambulance to the hospital. She was carried from the *798 car to the ambulance in a brace on a stretcher. Ms. Hollier testified that she had no memory of being rolled into the hospital emergency room. She was admitted to the hospital and stayed there for one week. Ms. Hollier suffered a lacerated liver, an enlarged spleen, and internal hemorrhaging. Ms. Hollier also suffered major bruising of her body. Ms. Hollier's diet was restricted to soft, bland foods and liquids rich in vitamins K and D. She continued the special diet for four months after the accident. After her discharge, she saw Dr. Cobb, who prescribed physical therapy and continuance of the medication Lortab. Dr. Cobb also noted that she had musculature stress as a result of the accident. Ms. Hollier ceased medical treatment in August of 1998 because, as an hourly paid worker, she could no longer afford to take the time off from work to attend physical therapy and doctor visits. Moreover, Ms. Hollier testified that she could not pay to see the doctor and knew that she would be ultimately responsible for the medical bills should the insurance not pay. Ms. Hollier attended physical therapy for about one month after the accident for two to three hours a morning, three days a week. However, Ms. Hollier testified that she continued to endure pain for a year after her last physical therapy visit. Ms. Hollier, a martial artist, could not practice until May of 1999. Ms. Hollier could no longer run or lift anything above five pounds. She further testified that for two months following the accident, any bending, twisting or sitting for long periods of time was excruciating. Ms. Hollier is still experiencing pain in her lower back. The sensory nerve in her right knee was damaged when it hit the dashboard; thus, she continues to experience a loss of full feeling across that knee. Also, she cannot sit in a kneeling position.
Mr. Matt had to be extricated from the vehicle after the accident. He was then taken to the hospital but was not admitted. As a result of the accident, Mr. Matt suffered severe bruising and a sprained knee and sternum. Mr. Matt also testified that the accident aggravated a genetic condition of his lower back. He also suffered cuts to his chest, elbow and above his eye as well as bruising to his chest, lower ribs and knee. Mr. Matt was also seen by Dr. Cobb for follow-up treatment. Dr. Cobb diagnosed Mr. Matt as suffering from severe strains and sprain over his chest, left knee, lower back, and shoulders as well as minor strains to his elbow. Dr. Cobb prescribed one month of physical therapy. Mr. Matt followed Dr. Cobb's physical therapy recommendation. Mr. Matt testified similar to Ms. Hollier as to the reason he ceased treatment with Dr. Cobbas an hourly worker, he could not afford to sit in the doctor's office for three to four hours at a time waiting to see the doctor. Mr. Matt further testified that the severity of his pain has never really abated although it does not occur as often. Mr. Matt also testified that due to the restriction in his activity because of pain, he gained seventy-five pounds that he has been unable to lose. Like Ms. Hollier, Mr. Matt was very active in the martial arts as an instructor. Mr. Matt also engaged in running and swimming. Mr. Matt testified that he can no longer run because he cannot put pressure on his injured knee. Mr. Matt also testified that after he was no longer able to attend physical therapy, he followed a home physical therapy treatment for three months. He was unable to rejoin his jujitsu class as an instructor until seven to eight months after the accident, and, even then, he was unable to perform some of the moves. On a scale of one to ten, Mr. Matt rated his pain at mostly one or two but testified that some *799 days the pain he experiences "shoots" up to a ten.
Given the circumstances of this case, we feel that the general damage awards of $15,000 to Ms. Hollier and $7,000 to Mr. Matt are abusively low. We increase the award to $30,000 for Ms. Hollier and $20,000 to Mr. Matt.

Exemplary
Plaintiffs were also awarded exemplary damages due to the intoxication of defendant, Ms. Bernard, at the time of the accident. Ms. Hollier was awarded $10,000 in exemplary damages, and Mr. Matt was awarded $5,000. Louisiana Civil Code Article 2315.4 provides as follows with respect to an intoxicated defendant:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
The parties stipulated that Ms. Bernard was intoxicated and that her actions were the sole cause of the accident and injuries involving the plaintiffs.
"The trial court has much discretion in setting the amount of exemplary damage awards." Selvage v. Robert Levis Chevrolet, Inc., 98-197, p. 11 (La.App. 5 Cir. 9/16/98); 719 So.2d 1088, 1093, writ not considered, 98-2626 (La.12/11/98); 729 So.2d 587. Thus, we must consider whether the trial court abused its discretion in awarding Ms. Hollier $10,000 and Mr. Matt $5,000 in exemplary damages. In determining the amount of exemplary damages to be awarded the following factors are relevant: (1) the nature and extent of the harm to the plaintiff; (2) the wealth or financial situation of the defendant; (3) the character of the conduct involved; and (4) the extent to which such conduct offends a sense of justice and propriety. Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141 (La.App. 1 Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
In this case, both plaintiffs suffered serious injuries and other related damages and expenses. The conduct involved is of great concern. Ms. Bernard, with an alcohol level of .231, posed a very real threat to the public by drinking and driving. The trial court found that Ms. Bernard's financial situation is such that any award of exemplary damages would exact a hardship. Under these circumstances, we find that the trial court properly determined that the plaintiffs were entitled to an award of exemplary damages. However, we find that the trial court abused its discretion in the amount awarded to the plaintiffs. Considering the factors above in determining the amount of exemplary damages to award, it appears that the trial court focused on factor number onethe nature and extent of harm to the plaintiffin awarding Mr. Matt fifty percent less in exemplary damages than Ms. Hollier. We find that the injuries suffered by Mr. Matt and Ms. Hollier are not so substantially different to warrant a fifty percent deviation in the amount awarded. Thus, we raise Mr. Matt's award of $5,000 to $10,000, equal to the amount awarded by the trial court to Ms. Hollier.

IV.

CONCLUSION
Based on the foregoing reasons, the judgment of the trial court denying penalties for State Farm's failure to initiate loss adjustment within fourteen days of notification of the plaintiffs' loss is reversed. *800 The plaintiffs, Ms. Hollier and Mr. Matt, are each awarded $5,000 for State Farm's breach of La.R.S. 22:658(A)(3). Moreover, considering that the plaintiffs suffered continued pain as a result of the injuries caused by the defendant for a year after the accident, Ms. Hollier's general damage award is increased to $30,000 and Mr. Matt's general damage award is increased to $20,000. Furthermore, we increase Mr. Matt's exemplary damage award to $10,000, equal to that of Ms. Hollier's. In all other respects, we affirm. State Farm is cast for all costs of this appeal.
AMENDED IN PART AND, AS AMENDED, AFFIRMED; REVERSED IN PART AND RENDERED.