# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**07-50**

KOURTNEY PHILLIPS, ET AL.

VERSUS

CECILIA OSMUN, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 102,528
HONORABLE RICHARD ERIC STARLING, JR., CITY COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**
**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, Michael G. Sullivan, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

**PETERS, J., CONCURS IN PART, DISSENTS IN PART AND ASSIGNS WRITTEN REASONS.**

                                    **AFFIRMED IN PART; REVERSED IN PART.**

**Roy Seale Halcomb, Jr.**
**Broussard, Bolton, Halcomb & Vizzier**
**P. O. Box 1311**
**Alexandria, LA 71301**
**Telephone:  (318) 487-4589**
**COUNSEL FOR:**
        **Plaintiffs/Appellees - Kourtney Phillips and Edmond Bratton**

**Keith M. Borne**
**Borne & Wilkes, L.L.P.**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**Telephone:  (337) 232-1604**
**COUNSEL FOR:**
        **Defendants/Appellants - Safeway Insurance Company of Louisiana and Cecilia Osmun**

**THIBODEAUX, Chief Judge.**

Defendants, Cecilia Osmun (Ms. Osmun), and her automobile liability insurer, Safeway Insurance Company of Louisiana (Safeway), appeal the trial court's judgment awarding general and special damages to plaintiffs, Kourtney Phillips (Ms. Phillips) and Edmond Bratton (Mr. Bratton) as a result of an automobile collision for which Ms. Osmun was found to be 100 percent at fault after a trial on the issues of liability and damages. Safeway also appeals the trial court's judgment awarding $5,000.00 in penalties against it in favor of Ms. Phillips because the court found that Safeway was arbitrary and capricious for not initiating loss adjustment on Ms. Phillips's medical expenses in a timely manner.

For the following reasons, we affirm the trial court's judgment awarding damages to both Mr. Bratton and Ms. Phillips. However, because the trial court abused its discretion in awarding $5,000.00 in penalties to Ms. Phillips against Safeway, the judgment awarding penalties to Ms. Phillips is reversed.

I.

**ISSUES**

Ms. Osmun and Safeway raise three issues on appeal:

1. the trial court erred by awarding general damages to Ms. Phillips in the amount of $12,000.00 and $2,000.00 for future medical expenses;

2. the trial court erred by awarding $12,000.00 in general damages to Mr. Bratton; and,

3. the trial court erred by awarding Ms. Phillips $5,000.00 in penalties per La.R.S. 22:1220 from Safeway because it did not timely initiate loss adjustment of her medical expenses as required by La.R.S. 22:658(A)(3).

## II.

## FACTS

A head-on collision occurred between the vehicle being driven by Mr. Bratton and the vehicle owned and driven by Ms. Osmun on March 27, 2004. Ms. Phillips was a passenger in Mr. Bratton's vehicle. As a result of that collision, both Ms. Phillips and Mr. Bratton sustained injuries.

Ms. Phillips was taken to a local emergency room and released. She then underwent treatment with a physician for two months, which included approximately two weeks of physical therapy. Her physician placed a note in her chart that she was experiencing no pain nor did she have any further symptoms of injury when he released her from treatment. While she had not sought any further medical care, she was complaining of continuing pain in her back at the time of trial.

Mr. Bratton's left hand hit the windshield of the car as a result of the impact with Ms. Osmun's vehicle. His hand was cut in a number of places. Pieces of glass from the windshield had to be removed from some of the wounds. Photos of his vehicle reveal blood on his air bag from his injured hand, and that the windshield was shattered from the impact of his hand.

Safeway was contacted by the plaintiffs approximately three to four days after the accident. Within forty-eight hours of receiving that notification, an adjuster for Safeway attempted to reach both plaintiffs by phone. Safeway then sent both Ms. Phillips and Mr. Bratton packets containing letters asking each of them to contact Safeway regarding the accident and their injuries. The packets also contained 'bodily injury letters,' asking each plaintiff to forward all medical bills and records to Safeway when their treatment was completed so that settlement of their claim could begin. Those packets were sent on March 31, 2004.

2

Ms. Phillips and Mr. Bratton retained an attorney within one week of the collision. Their attorney contacted Safeway informing the company that all medical bills and claims would come from the attorney, and that all correspondence about the claim should be received by the attorney. The claim for damage to Mr. Bratton's vehicle was settled without incident or complaint.

Medical bills were sent to Safeway by the plaintiffs' attorney on June 18, 2004, and received by Safeway on June 21, 2004. Safeway alleges that the medical bills did not come with an attendant settlement demand as Safeway requested of the plaintiffs' attorney. More medical bills were sent on three other occasions to Safeway. On October 12, 2004, a demand for settlement was sent to Safeway by the plaintiffs' attorney. While Safeway responded to this demand and attempted to conclude the loss adjustment on the medical bills and general damages claims at that time, the plaintiffs' attorney filed suit for damages and penalties.

The trial court found in favor of Ms. Phillips and Mr. Bratton. Ms. Phillips was awarded general damages in the amount of $12,000.00. She was also awarded special damages for past medical expenses in the amount of $2,657.32, future medical expenses in the amount of $2,000.00, and lost wages in the amount of $432.50. Mr. Bratton was awarded general damages in the amount of $12,000.00. The trial court also awarded $5,000.00 in penalties against Safeway in favor of Ms. Phillips for its failure to timely initiate loss adjustment of her claim for medical expenses, finding that this late payment was arbitrary and capricious pursuant to La.R.S. 22:1220.

III.

## LAW AND DISCUSSION

**Standard of Review**

We note that neither Ms. Osmun nor Safeway raise the issue of liability on appeal. Therefore, the trial court's determination that Ms. Osmun was 100% at fault for the accident will not be discussed.

An award for general damages compensates an injury victim for the less specific injuries that accompany physical trauma. These injuries are not as easily confined to exact bills.

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." *Keeth v. Dept. of Pub. Safety & Transp.*, 618 So.2d 1154, 1160 (La.App. 2 Cir. 1993).

*Duncan v. Kansas City S. Ry. Co.*, 00-66, p. 13 (La. 10/30/00), 773 So.2d 670, 682, *writ dismissed*, 532 U.S. 992, 121 S.Ct. 1651 (2001).

An appellate court can only change an award of general damages if it finds that the trial court abused the great discretion vested in it to determine such damage awards. *Id.*

> Importantly, on review, an appellate court should rarely disturb an award of general damages because "the discretion vested in the trier of fact is 'great,' and even vast." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the trier of fact has abused its much discretion that the appellate court may disturb the award, but then only to the extent of lowering it to the highest point or raising it to the lowest point which was reasonably within the discretion of the trier of fact. *Id.* However, this principle of appellate review applies only when a litigant "questions the adequacy of a monetary award in a case which is otherwise

> uncomplicated by factual errors relating to the cause or duration of the plaintiff's disability." *Mart v. Hill*, 505 So.2d 1120, 1128 (La.1987).

*Basco v. Liberty Mut. Ins. Co.*, 05-143, p. 9 (La.App. 3 Cir. 8/17/05), 909 So.2d 660, 666.

Therefore, we will review the record in its entirety to determine if the trial court abused its vast discretion, and not to determine what this court would award if reviewing the case de novo. "'[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.' *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So.2d 70, 74 (*quoting Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994))." *Mouhot v. Twelfth St. Baptist Church*, 06-1283, p. 4 (La.App. 3 Cir. 2/7/07), 949 So.2d 668, 671.

### Did the Trial Court Abuse its Vast Discretion by Awarding Ms. Phillips $12,000.00 in General Damages and $2,000.00 For Future Medical Expenses?

### General Damage Award

Testimony and evidence in the record establish that Ms. Phillips was a relatively healthy young woman with no reported injuries, aches or pains before the accident with Ms. Osmun. After the accident there is both subjective and objective evidence in the record showing that she sustained injuries to her knees, neck and back. The injury to her back required ongoing medical treatment that included physical therapy for at least two months.

Her physician, Dr. Robert K. Rush, testified that he diagnosed Ms. Phillips with lumbar strain, post-traumatic headaches, trauma to her knees, and muscle spasms in her lower back. He stated that muscle spasms are indicative of soft

tissue muscle and ligament injury which usually means that there has been tearing of those tissues with subsequent inflammation.

Dr. Rush felt that Ms. Phillips's complaints regarding pain during prolonged sitting, standing or repetitive bending were consistent with a diagnosis of lumbar strain. He also testified that the injury and resulting pain were more likely than not a result of the car accident. Dr. Rush described Ms. Phillips as a sincere young lady. He had no reason to believe that her complaints were either embellished or misleading.

Because there is ample evidence in the record which supports the trial court's award of $12,000.00 in general damages to Ms. Phillips, we affirm the judgment of the trial court.

## Future Medical Expenses

Future medical expenses are a component of special damages and must be proven by a preponderance of the evidence. *Basco v. Liberty Mut. Ins. Co.*, 05-143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660. To recover future medical expenses, the plaintiff must present medical testimony to show that it is more probable than not that future medical treatment is indicated and the probable cost of the treatment. *Id.*

*Smith v. Municipality of Ferriday*, 05-755, p. 11-12 (La.App. 3 Cir. 2/1/06), 922 So.2d 1222, 1231, *writ denied*, 06-934 (La. 9/29/06), 937 So.2d 860.

While Dr. Rush discharged Ms. Phillips from treatment on June 9, 2004 stating that her injuries had resolved, Ms. Phillips testified at trial that she was still experiencing back pain as a result of the car accident. The trial court found her to be a credible witness and believed that she was still having pain. The trial court's determination of her credibility must be given great deference, and cannot be overturned by this court absent a showing of manifest error. *Id.*

6

Dr. Rush stated that it was not uncommon for complicated or more severe lumbar strains to continue to cause the patient pain long after the usual eight to twelve weeks that a non-complicated tissue injury might take to resolve. He said that patients will have good days and bad days depending on the kind of activity pursued that day. He postulated that Ms. Phillips's ongoing pain could likely be the result of a ligamentous injury with resulting instability, or perhaps degenerative disc disease which was now becoming symptomatic.

Dr. Rush suggested that the best course of action for Ms. Phillips to pursue would be to undergo a spine motion flouroscopy study and a magnetic resonance imaging (MRI) of her lower back. He said that both of those tests would be needed to help diagnose and treat her ongoing pain. He estimated that the cost of those two tests combined would be approximately $2,000.00. His estimates were based on his experience and familiarity with both of those tests.

It was not manifest error for the trial judge to award Ms. Phillips $2,000.00 for future medical expenses based on Dr. Rush's estimates of the costs of those tests. Given the possibility that the results of the two tests may require Ms. Phillips to undergo more medical treatment and care, $2,000.00 was a conservative and reasonable award. The trial court's award of $2,000.00 to Ms. Phillips for future medical expenses is affirmed.

**Did the Trial Court Abuse its Vast Discretion by Awarding Mr. Bratton $12,000.00 in General Damages?**

Mr. Bratton presented a number of photos of his left hand evidencing the cuts and scars he sustained from the accident. He testified that he did not have any scarring on his left hand before the accident. He also stated that the injuries were still sore and tender to the touch. Mr. Bratton had significant scarring on his left hand as

of the date of trial. He stated that he was self-conscious about his scars when people looked at them. His appearance plays a role in his work, which is selling and delivering products to customers.

Both he and Ms. Phillips talked about the serious nature of his injuries. In order to be awarded general damages, he does not need to submit medical bills. General damages reimburse an injured party for pain and suffering. *Duncan v. Kansas City S. Ry. Co.*, 773 So.2d 670. There was ample evidence in the record of Mr. Bratton's pain and suffering as a result of the injuries he sustained from the accident. The trial court did not abuse its discretion in awarding general damages to Mr. Bratton because of the injuries he sustained and the scarring and pain he currently lives with. The trial court's award of general damages to Mr. Bratton in the amount of $12,000.00 is affirmed.

### Did the Trial Court Commit Manifest Error by Awarding Ms. Phillips $5,000.00 in Penalties from Safeway Because Safeway Did Not Initiate Loss Adjustment of Ms. Phillips's Medical Expenses in a Timely Manner?

A trial court's determination that statutory penalties are in order is largely based on that court's factual conclusions which we review under the manifest error standard. "Because the decision to assess statutory penalties is a factual determination, in part, we review the trial court's assessment of penalties against Safeway under the manifest error standard of review. We acknowledge that since the pertinent statutes subject insurers to penalties, we must construe them strictly." *Joubert v. Broussard*, 02-911, pp. 1-2 (La.App. 3 Cir. 12/11/02), 832 So.2d 1182, 1184, *writ denied*, 03-60 (La. 3/21/03), 840 So.2d 552.

The penalty assessed against Safeway is based on the trial court's determination that La.R.S. 22:658(A)(3) was violated by the insurer. The statute reads, in pertinent part, as follows:

(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.

La.R.S.22:658(A)(3).

The penalties that can be assessed for violation of La.R.S. 22:658(A)(3) are statutorily provided.

§ 1220. Good faith duty; claims settlement practices; cause of action; penalties

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

. . . .

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer

in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

La.R.S. 22:1220(A)-(C).

An insurer must take some action of substance in order for a court to consider that the insurer has initiated loss adjustment.

> In initiating loss adjustment, the insurer must take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim. *Chatoney v. Safeway Insurance Company*, 00-1189, (La.App. 3 Cir. 6/13/01) 2001 WL 665207, 801 So.2d 448. *McClendon v. Economy Fire & Casualty Insurance Company*, 98-1537 (La.App. 3 Cir. 4/7/99) 732 So.2d 727, 731. Simply opening a file does not satisfy the requirement of La.R.S. 22:658(A)(3) that an insurer initiate loss adjustment.

*Rogers v. Commercial Union Ins. Co.*, 01-443, p. 8 (La.App. 3 Cir. 10/3/01), 796 So.2d 862, 868.

In *Joubert*, this court determined that the insurer's act of internally checking its own files to determine if the claimant was insured at the time of the accident did not constitute initiating loss adjustment. In *Rogers*, we concluded that making and receiving phone calls did not rise to the level of initiating loss adjustment either. "We note that Economy's action of simply opening a file does not satisfy the requirement of La.R.S. 22:658(A)(3) that the insurer initiate loss adjustment. We interpret this provision to require that the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." *McClendon v. Economy Fire & Cas. Ins. Co.*, 98-1537 p. 7 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731.

In this case, Safeway did more than open a file or make and receive phone calls. Steps were taken to accumulate the facts needed to process the claim. A packet was sent to both plaintiffs forty-eight hours after Safeway was informed about the accident. Safeway communicated with Ms. Phillips through her lawyer as

requested, and repeatedly asked for a demand letter when all medical treatment was completed and bills were ready for payment.

The record shows that Ms. Phillips's attorney sent her medical bills to Safeway in installments. While most of the letters sent with those installments stated that the bills were being presented for payment, the letters did not state that the treatment was completed and that a formal demand was being made.

Safeway's claims adjuster testified that Safeway has a policy to request a demand letter when all medical treatments are complete for all medical expense claims. The reason it wants a demand letter is to signal that it is time to review the file and begin settlement discussions. Without a formal demand letter, Safeway cannot be sure that a demand for payment is being made.

On October 14, Safeway received a formal demand letter from Ms. Phillips's attorney for payment of all medical expenses. Within five days of receipt of that demand letter, the claims adjuster reviewed Ms. Phillips's file with a supervisor, who then contacted Safeway's general counsel, and a letter offering settlement of all medical claims was sent to Ms. Phillips's attorney.

Safeway contends that it met the statutory requirement of initiating loss adjustment within fourteen days of notice of the claim. It also contends that settlement negotiations began within five days of receipt of a demand letter. We agree. Safeway did more than place and receive calls, and open a file. Safeway was actively corresponding with Ms. Phillips regarding her claim for medical expenses, and was consistently asking for a demand letter when medical treatment was completed. Safeway was taking steps to gather the information needed to evaluate and process Ms. Phillips's claim for medical expenses. Safeway was not arbitrary and capricious. The insurer was consistently seeking information and a formal demand.

The trial court's judgment awarding Ms. Phillips $5,000.00 in penalties against Safeway for not timely initiating loss adjustment is reversed.

## IV.

## **CONCLUSION**

A trial court's award of general damages, future medical expenses, and penalties is reviewed by an appellate court for an abuse of the trial court's vast discretion or manifest error. There were ample facts in the record to support the trial court's award of $12,000.00 in general damages and $2,000.00 for future medical expenses to Ms. Phillips. Likewise, the record supports as reasonable the trial court's judgment awarding $12,000.00 in general damages to Mr. Bratton. These damage awards are affirmed.

The trial court's interpretation of Safeway's actions as arbitrary and capricious because the insurer did not timely initiate loss adjustment is not supported by the record. The record reflects that Safeway took actions which met the legal requirement of initiating loss adjustment pursuant to La.R.S. 22:658(A)(3). Therefore, the portion of the trial court judgment awarding Ms. Phillips $5,000.00 in penalties is reversed.

The costs of this appeal are split between the plaintiffs, Ms. Phillips and Mr. Bratton, and the defendants, Ms. Osmun and Safeway. The plaintiffs are cast with one-third of the costs of this appeal. The defendants and are cast with two-thirds of the costs of this appeal.

**AFFIRMED IN PART; REVERSED IN PART.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-50

KOURTNEY PHILLIPS, ET AL.

VERSUS

CECILIA OSMUN, ET AL.

PETERS, J., concurring in part and dissenting in part.

I agree with the majority in all respects except the conclusion that the trial court erred in awarding Kourtney Phillips $5,000.00 in penalties from Safeway Insurance Company of Louisiana (Safeway). I would affirm the trial court's factual finding that Safeway did not initiate loss adjustment of Ms. Phillips's medical expenses within fourteen days of notification of loss, as required by La.R.S. 22:658(A)(3).

The accident that caused the plaintiffs' injuries occurred on March 27, 2004, and Safeway received notice of the claim almost immediately. As the majority notes, within forty-eight hours of receiving notice of the claim, an adjuster for Safeway attempted to reach the plaintiffs by phone, and on March 31, 2004, Safeway sent the plaintiffs packets containing letters asking each of them to contact Safeway regarding the accident and their injuries. These packets contained letters requesting that the plaintiffs forward all medical bills and records to Safeway *when their treatment was completed* so that settlement of their claims could begin.

On April 7, 2004, plaintiffs' retained counsel forwarded Safeway a letter advising of his representation. At trial, Lane Kirk Jude Stelly, a claims adjuster at Safeway, testified that Safeway responded to that letter by requesting that counsel send Safeway all the medical bills and a demand packet for injuries sustained in the

accident. However, no such letter was introduced into evidence, and Safeway's activity log, which details the actions taken on Ms. Phillips's claims, does not indicate that such a response was sent. The plaintiffs' attorney sent Safeway a letter on June 18, 2004, attaching Ms. Phillips's medical reports and medical bills "enclosed for payment."[1] The plaintiffs' attorney sent Safeway letters and medical bills on July 2, 2004,[2] July 14, 2004,[3] and August 12, 2004.[4] On October 12, 2004, the plaintiffs' attorney sent Safeway a formal demand letter for payment of all Ms. Philips's medical expenses. At that point a claims adjuster reviewed the file, and Safeway contacted Ms. Phillips's attorney with an offer to settle all medical claims.

Louisiana Revised Statute 22:658(A)(3) requires an insurer to initiate adjustment of a claim within fourteen days after notification of the loss. Here, Ms. Phillips notified Safeway of the accident on March 30 or 31, 2007, and first sent in

---

[1]The June 18, 2004 letter states, in pertinent part:

Enclosed are copies of the following medical records: Medical reports of Dr. Robert K. Rush dated April 7, 2004 and June 9, 2004, covering his treatment of Ms. Phillips; and, records of Guidroz Physical Therapy covering treatment of Ms. Phillips from May 5, 2004 through May 21, 2004. Also enclosed for payment are the following medical bills: Dr. Robert K. Rush for treatment of Ms. Phillips from April 7, 2004 through May 11, 2004, in the amount of $220.00; Guidroz Physical Therapy for treatment of Ms. Phillips from May 5, 2004 through May 21, 2004, in the amount of $680.00 of which $35.00 is for the enclosed medical records; St. Frances Cabrini Hospital for treatment of Ms. Phillips on March 27, 2004 in the amount of $750.00; and, Eckerd Drugs for medication purchased by Ms. Phillips in the amount of $104.12. Also enclosed for payment is the bill of Source Corp for the enclosed records from Cabrini Hospital in the amount of $29.06. I am also enclosing a letter from Ms. Phillips' employer, Comfort Inn, verifying her employment, her rate of pay and the days of work that she missed as a result of her injuries.

[2]The July 2, 2004 letter states, in pertinent part: "Enclosed for payment is the bill of Acadian Ambulance Service in the amount of $610.20."

[3]The July 14, 2004 letter states, in pertinent part: "Enclosed for payment is the bill of Central La. Imaging in the amount of $81.00 for treatment of Ms. Phillips on March 27, 2004."

[4]The letter of August 12, 2004 states, in pertinent part:
Enclosed for payment is the bill of Christus St. Francis Cabrini Hospital in the amount of $750.00 for treatment of Ms. Phillips on March 27, 2004. Also enclosed is a copy of a certified copy of the records of Christus St. Francis Cabrini Hospital covering Ms. Phillips [sic] treatment in the emergency room on March 27, 2004.

a claim for medical expenses on June 18, 2004. From that time until October 12, 2004, Safeway's only actions were to open a file and to send first Ms. Phillips and then her retained counsel a letter, stating that it would not take any action on her claim for medical expenses until all medical treatment was complete and she or her attorney sent a demand letter to that effect. In fact, at the trial Safeway's claim adjuster testified that when Safeway receives medical expense claims, its policy is to wait to review the file and begin settlement discussion until a claimant submits a demand letter stating that all medical treatments are complete.

The statute's mandate that loss adjustment be initiated requires that "the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." *McClendon v. Econ. Fire & Cas. Ins. Co.*, 98-1537, p. 7 (La.App. 3 Cir. 4/7/99), 732 So.2d 727, 731. This court has held that an insurance company has not satisfied the requirements of La.R.S. 22:658(A)(3) when the insurance company had opened a file and informed the plaintiffs that it "was going to deal with the damaged personal property only after the other property damage claims were handled." *Hollier v. State Farm Mut. Auto. Ins. Co.*, 01-592, p. 5 (La.App. 3 Cir. 10/31/01), 799 So.2d 793, 797.

In this almost identical situation, where Safeway adhered to its policy that it would not review the claim or begin settlement discussions until all medical treatment had been completed, I would follow *Hollier*, affirm the trial court's factual finding that Safeway had not taken a substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim, and affirm the trial court's judgment awarding Ms. Phillips $5,000.00 in penalties under La.R.S. 22:1220.

3